JEMISON v. COMMISSIONER OF INTER-
NAL REVENUE.
No. 5575.

Circuit Court of Appeals, Fifth Circuit.
Dec. 2, 1930.

Charles J. Bloch, J. E. Hall, and Pope F. Brock, all of Macon, Ga. (Brock, Sparks & Russell and Hall, Grice & Bloch, all of Macon, Ga., on the brief), for petitioner.

C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Shelby S. Faulkner, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., G. A. Youngquist, Asst. Atty. Gen., and Sewall Key, Morton P. Fisher, and A. G. Divet, Sp. Assts. to Atty. Gen. (Robert L. Williams, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C., on the brief), for respondent.

Before BRYAN and FOSTER, Circuit Judges, and SIBLEY, District Judge.

FOSTER, Circuit Judge.

On November 12, 1920, the Commissioner of Internal Revenue determined a deficiency of income taxes against the petitioner for the year 1919, based on the failure of the taxpayer to include as a profit for that year $29,456.41, his share of the surplus of a corporation which had been distributed, and assessed a penalty of 50 per cent. for fraudulent concealment of the same, under the provisions of section 250, Revenue Act of 1918 (40 Stat. 1082). The taxes and penalty assessed amount to $10,830.99. On appeal to the Board of Tax Appeals the ruling of the Commissioner was affirmed. 13 B. T. A. 69.

The material facts found by the Board are these:

The petitioners, James B. Jemison and Thomas L. Ross, were the sole stockholders of J. B. Jemison & Co., a corporation engaged in the wholesale lumber business at Thomasville, Ga., in the proportions of 60 and 40 per cent., respectively. On May 24, 1919, the corporation was liquidated, its charter was surrendered, and assets in bulk valued at $49094.01 were transferred to a partnership of the same name and composed of the said stockholders, with their interest in the same proportions. The business was thereafter conducted by the partnership. Returns for the corporation, covering the period from January 1, 1919, to May 24, 1919, for the partnership and for the individual partners for the balance of the year, were filed on the same day, March 12, 1920, with the Collector of Internal Revenue for the District of Georgia. Both the corporation return and the partnership return, with attached balance sheets, showed the surplus transferred to the partnership. The individual returns did not show it. Later the corporation return was audited by the Commissioner. By a letter dated February 2, 1921, he requested information as to whether the corporation was dissolved on May 24, 1919, and as to what disposition was made of its assets. The Commissioner was advised by a

letter, dated March 4, 1921, that the corporation had been dissolved and its assets distributed as shown on the balance sheet. The partnership return was audited and information (not material to this case) was requested by a letter dated September 24, 1921. The information was furnished in a letter dated September 24, 1921. Based on an investigation of the partnership returns for the years 1920, 1921, and part of 1922, on April 17, 1926, the Commissioner advised petitioner that his share of the corporation surplus of $49,094.01 represented a liquidation dividend and should have been returned on his 1919 return, and asked for his reasons for not doing so. The returns had been prepared by J. C. Murphy, an attorney who had previously been employed for about five years as a deputy collector in the office of the Collector of Internal Revenue in Atlanta, where his duties had consisted, among other things, in assisting taxpayers in preparing their income tax returns. On receipt of the letter from the Commissioner, on April 17, 1926, petitioner communicated with Murphy and received a letter from him dated April 21, 1926, which in part was as follows:

"It has been some time now since those returns were filed, but as I remember it, we did discuss the question of taxability of the corporation surplus account, but we all decided that in as much as there was doubt as to its taxability that it should not be reported. As I remember it, I told you at that time that the Commissioner of Internal Revenue might rule that this was taxable income and assess you accordingly. You know at that time the regulations were not clear, and there has been doubt as to many points all along, which is evidenced by the many changed rulings made by the Commissioner himself.

"There has been nothing at all hid from the Commissioner. He has been in possession of the corporation returns now for more than six years, which showed on the face of it that the corporation was dissolved and that you were one of the stockholders, and whatever tax was properly assessable against you on this account should have been listed long ago."

This letter was forwarded to the Commissioner in response to his request. The assessment followed.

On the facts as above found the Board concluded that the returns were false and fraudulent and were made with the intent to evade the payment of taxes. This conclusion was based mainly on the letter written by Murphy, which was forwarded to the Commissioner, and the further facts that Murphy was familiar with the Treasury Regulations.

■ There is no doubt, in view of the decision in Hellmich v. Hellman, 276 U. S. 233, 48 S. Ct. 244, 72 L. Ed. 544, 56 A. L. R. 379, that the surplus turned over to the partnership was taxable to the partners under the provisions of § 201(c) of the Revenue Act of 1918 (40 Stat. 1059) instead of under § 201(a), and that any gain realized by the stockholders from this distribution of the assets in liquidation was subject to be taxed in like manner as if they had sold their stock to third persons. Prior to the above-cited decision there was considerable doubt on the question. In the case just cited the Circuit Court of Appeals for the Eighth Circuit had decided differently (18 F.(2d) 239), while in the case of Langstaff v. Lucas, 13 F.(2d) 1022, affirming the decision of the District Court (9 F.(2d) 691), the decision of the District Court of Appeals for the Sixth Circuit was in harmony with the subsequent decision by the Supreme Court.

There was also a change of position by the Internal Revenue Department. Article 1566 of Regulations 45, promulgated April 17, 1919, and which was in force when the corporation was liquidated, provided: "Where a corporation dissolves and distributes its assets in kind and not in cash no taxable income is received from the transaction by its stockholders, because they merely exchange an indirect interest for a direct interest in the same property." This article was modified by Treasury Decision 2924, approved September 26, 1919, which was in effect when the returns were made, and provision was made for the taxation of any excess of the liquidating dividend received over the cost of stock to the stockholder, or over its fair market value as of March 1, 1913, if acquired prior thereto. Murphy was familiar with these regulations, but did not believe that the amendment of September 26, 1919, was supported by the law. See opinion of the Board.

■ The assets of the corporation were transferred to the partnership at book value. It is not shown what profit the petitioner derived over the cost of his stock, but in that respect the determination of the Commissioner must be presumed to be prima facie correct. However, the presumption does not extend to his determination that the taxpayer was guilty of fraud in filing his returns. Fraud is not to be presumed, but must be determined from clear and convincing evidence, considering all the facts and circum-

stances of the case. Vitelli & Son v. U. S., 250 U. S. 355, 39 S. Ct. 544, 63 L. Ed. 1028. It is not inconsistent with good faith that the taxpayer, being ignorant of the regulations and the law generally, sought expert advice and relied upon it. He was not bound to determine a doubtful question against himself, and, in the last analysis, there was no actual concealment. The returns were all filed on the same day with the same official. Both the corporation return and the partnership return showed that the surplus had been turned over to the partnership. If the Commissioner had merely looked at what was before him, he would have known all that the audit in 1926 disclosed. Furthermore, when in February, 1921, he made inquiry as to the dissolution of the corporation and the distribution of its assets, his attention was particularly called to the returns by the taxpayer's letter of March 4, 1921, more than five years before the assessment.

Under the provisions of section 250(d) of the Revenue Act of 1918 (40 Stat. 1083), the limitation of five years had run against the redetermination and assessment by the Commissioner unless the return was false or fraudulent, in which event there was no limitation. It was necessary, in order to make the assessment for the Commissioner, to find that the return was false and fraudulent and to impose the penalty of 50 per cent. The Langstaff Case was decided by the Court of Appeals for the Sixth Circuit, June 30, 1926, and it is significant that the order of redetermination was not made until thereafter. It may be assumed that, notwithstanding his amendment of the regulations, the Commissioner was still in doubt as to the taxability of this particular distribution until there was an authoritative judicial determination of the question.

On the whole case we are constrained to disagree with the Board, and conclude that the facts found do not support the decision.

The petition is granted, and the judgment appealed from is reversed.