**SNEAD, Collector of Internal Revenue, v. ELMORE.\***

No. 6527.

Circuit Court of Appeals, Fifth Circuit.
June 8, 1932.

John B. Isbell, U. S. Atty., of Fort Payne, Ala., W. L. Longshore, Asst. U. S. Atty., of Birmingham, Ala., and J. S. Franklin, Atty., Bureau of Internal Revenue, of Washington, D. C., for appellant.

Wm. S. Pritchard, and Oliver D. Street, both of Birmingham, Ala., for appellee.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

*Rehearing denied August 1, 1932.

SIBLEY, Circuit Judge.

W. E. Snead, as Collector of Internal Revenue, appeals from a judgment by the court without a jury in favor of F. H. Elmore for the recovery of additional normal taxes for the calendar year 1918, paid under protest. The additional tax arose from charging to Elmore his pro rata as a partner in the firm of Elmore, Brame & Co., of what was claimed to be a profit on a sale of stock or an amount distributed in the liquidation of a corporation, Demopolis Cotton Mill, on August 31, 1918, all the stock of which except one share was owned by the partnership. At the date mentioned the corporation owed $75,000 in bonds and otherwise, but its books showed a surplus over debts and capital stock of about $63,000. It was losing money, however, and had little cash or credit. On August 27, 1918, the stockholders authorized a sale of the entire assets of the corporation, and on August 31st the corporation executed a deed signed also by Elmore, Brame & Co., and by each partner, whereby, in consideration of the assignment by the partnership to the corporation of the capital stock and their assumption of all corporate liabilities of every kind, the corporation conveyed to the partnership and to the partners the real and personal property including all choses in action and the good will of the corporation. The corporation then filed a certificate of dissolution under section 7063 of the Code of Alabama, which operated to dissolve the corporation and leave the directors to settle its affairs as trustees having under section 7069 five years for the purpose. Entries were made on the partnership books showing the transaction and apportioning the book surplus of the corporation to the credit of the *several separate accounts of the partners.* The partnership thereafter ran the mill, continuing the books of the corporation, paid its debts, improved the property, and finally in 1920 sold it for cash and realized in money repayment of their investment prior to August 31, 1918, their advances since, and the surplus which then appeared on the books. The additional tax was paid May 29, 1925. The claim for refund filed July 18, 1925, in its statement of facts omitted reference to the deed made by the corporation, but reciting the other facts touching the dissolution and transactions since, made three claims: (1) That what happened did not show that any amounts were distributed in liquidation by the corporation in 1918, and that nothing was really received by the stockholders until 1920; (2) that the Revenue Act of 1918 which was not approved until February 24,

1919, could not by section 201 (c), 40 Stat. 1059, retroactively impose normal taxes on the distribution if one occurred; and (3) that the tax was barred when assessed. On August 4, 1927, the claim for refund was amplified as to the ground of limitation, but no new facts or grounds were added. Neither the claim for refund, its amplification, nor any letter to the Commissioner concerning it undertook to set up that the tax was wrong in amount or that the book surplus was incorrect by reason of error either as to the investment in the capital stock, the amount of debts, or the value of the corporate assets. When, after failure to decide the claim in six months, suit was brought, the claim was annexed and the three grounds named in it were set up as grounds for recovery. On the trial, over an objection that the matter was not embraced within the issues pleaded or the claim for refund, Elmore and his partner were allowed to testify that the corporate assets were not worth their book value on August 31, 1918, or salable at any price as they stood, and that their net value at no time in 1918 exceeded the amount invested in the stock by the partnership. An amendment was then offered to add another count which challenged the amount of the tax by questioning the book value of the assets and claiming that the original cost of the stock exceeded the true value of the corporate net assets. The United States attorney representing the collector consented in writing to this amendment, and asked and was allowed time to investigate it. We should have construed this consent and request for delay to be a waiver of the question of the sufficiency of the claim for refund to cover the issue thus pleaded, within the ruling in Tucker v. Alexander, Collector, 275 U. S. 228, 48 S. Ct. 45, 72 L. Ed. 253; but when the trial was resumed counsel for the Commissioner announced that it was agreed in open court that he might withdraw his former pleading and "plead in short by consent, with the right to give in evidence all matters that might be specially pleaded in respect to the insufficiency of the claim for refund to support the right of recovery now insisted upon by Elmore." To this counsel for Elmore replied: "It was understood in the beginning that the defendant could have that defense." The motion was then renewed to exclude the evidence on this ground and again overruled, and exception taken. The claim for refund, its amendment, and the correspondence about it were all proven. Appropriate motion for judgment was made by the collector and exception taken to its refusal. The judgment as signed recites this

consent to give evidence supporting the contention that the claim for refund did not cover the contentions stated. We think the point was duly presented and is well taken.

The United States have consented that illegally exacted taxes may be sued for in court only after a claim for refund shall have been timely made to the Commissioner of Internal Revenue under regulations made by him. 26 USCA § 156; King's County Savings Institution v. Blair, 116 U. S. 200, 206, 6 S. Ct. 353, 29 L. Ed. 657. The regulations then in force, No. 45, Art. 1036, require that, "All the facts relied upon in support of the claim shall be clearly set forth under oath." The purpose is to enable the claimed errors to be corrected by the Commissioner and suits to be minimized, and if disagreement persists to limit the litigation to the matters which have been so re-examined and in reference to which the tax officers are fully prepared to defend the issue. They may decline to waive and may insist on a proper claim for refund as a prerequisite to· suit. Tucker v. Alexander, Collector, supra; United States v. Felt & Tarrant Co., 283 U. S. 269, 51 S. Ct. 376, 75 L. Ed. 1025. This does not mean that the claim for refund must have contained all the evidence or argument that is offered in the suit, but it must have indicated not only the amount claimed but the substantial grounds on which illegality is asserted and the general facts supporting the grounds, so that they may be fully investigated. A special ground of illegality duly stated does not justify suit though for the same tax upon a wholly different ground and resting on different facts, nor does a general reservation of rights and claim of illegality in the application for refund afford any help to the tax officer or any benefit to the suing taxpayer. United States v. Felt & Tarrant, supra, 283 U. S. at page 272, 51 S. Ct. 376, 75 L. Ed. 1025. The claim for refund here involved was definite in amount and in pointing out the item attacked and it stated separately three distinct grounds with the facts supporting them for annulling the tax. But the contention that the item was inaccurate in amount because the corporation's books were wrong was never suggested and no inquiry into the actual value of the corporate assets or the actual cost to the taxpayer of the corporate stock was ever invited. Without a waiver from the officer this new ground could not be brought into the suit. Upon proof that the claim for refund had contained no such contention, the evidence supporting it should have been stricken. Other cases confining the scope of the suit to the scope of the claim for refund are J. P. Stevens Engraving Co. v. United States (C. C. A.) 53 F.(2d) 1; H. Lissner Co. v. United States (Ct. Cl.) 52 F.(2d) 1058; Taylor-Lockwood Co. v. United States (Ct. Cl.) 45 F.(2d) 284; Red Wing Malting Co. v. Willcuts (C. C. A.) 15 F.(2d) 626, 49 A. L. R. 459; Solomon v. United States (D. C.) 49 F.(2d) 638; J. H. Williams & Co. v. United States (D. C.) 46 F.(2d) 155.

Of the three original contentions those relating to the bar of the assessment by limitation and to the claim that the Revenue Act of 1918 could not be retroactively applied were abandoned. The court found in favor of the third, and that since the corporation's debts were not actually paid or its assets reduced to cash in 1918 there was nothing distributed that year to stockholders, but that its assets continued vested in the directors as trustees after the dissolution. We think that conclusion was wrong under the uncontradicted evidence. If, notwithstanding the book entries, the assets had actually continued in the hands of the directors as trustees for the corporate creditors and stockholders, it might well be said that the stockholders received nothing by the mere dissolution of their corporation, and that they realized on their stock only when the directors in pursuance of their trust paid the corporate debts and made a distribution of money or property to the stockholders. Wells Fargo Bank v. Blair, 58 App. D. C. 160, 26 F.(2d) 532. But another course was pursued here. The corporation before dissolution sold its assets and ceased to own them, the purchasers agreeing to pay the corporate debts. The creditors, of course, might still have held the corporation as debtor, and might have attacked the sale; but the corporation at the time of its dissolution had no property to vest in trust in its directors. The purchasers of the assets, moreover, as a part of their contract had assigned and surrendered to the corporation all their stock, so that they were no longer stockholders and could never subsequently claim anything as a dividend on the stock. They thought the assets received worth more than the debts assumed and their investment in the stock, and entered the excess on their own books as a profit in the transaction. A profit it clearly was, and realized at the time that title to the stock was exchanged for title to the assets. It was a partnership transaction, but each partner was chargeable with income tax on his share in it, whether distributed by the partnership or not. Revenue

Act 1918, § 218 (a), 40 Stat. 1070. Stockholders actually receiving the assets of their corporation on its dissolution in virtue of their stock are held to receive a present liquidating dividend though they may not pay the corporate debts and fully administer the assets until later. Hellmich v. Hellman, 276 U. S. 233, 48 S. Ct. 244, 72 L. Ed. 544, 56 A. L. R. 379; Jemison v. Commissioner (C. C. A.) 45 F.(2d) 4; Wells Fargo Bank v. Blair, supra. Much more clearly is a normal tax due when, as here, the stockholders before dissolution formally exchange their stock for the assets.

The judgment is reversed, and the case remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.