UNITED STATES v. ROGERS et al.
(two cases).
No. 9489.

Circuit Court of Appeals, Ninth Circuit.

May 1, 1941.

———◇———

WILBUR, Circuit Judge, dissenting in part.

Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, J. Louis Monarch, Carlton Fox, and Julian G. Gibbs, Sp. Assts. to Atty. Gen., and Ben Harrison, U. S. Atty., and Edward H. Mitchell and Armond Monroe Jewell, Asst. U. S. Attys., all of Los Angeles, Cal., for the United States.

Claude I. Parker, Bayley Kohlmeier, and Stuart T. Baron, all of Los Angeles, Cal., for taxpayers.

Before WILBUR, GARRECHT, and HANEY, Circuit Judges.

HANEY, Circuit Judge.

Two appeals regarding recovery of income taxes paid by the taxpayers for the years 1929 and 1930 are presented.

The taxpayers in 1920 purchased for $55,000 a parcel of real property in Beverly Hills, California, improved with a residence, and in the following year made alterations to and installed improvements in the house at a cost of $48,777.33. At the same time they made further improvements to the property as follows: swimming pool at a cost of $1,930.15; fence at a cost of $4,650; barn at a cost of $8,366.-25; garage at a cost of $6,124.98; shrubbery at a cost of $1,962.04. The taxpayers occupied the property as a residence from 1920 to August, 1929.

In August, 1929, while preparing to make alterations and additions to the house, the taxpayers discovered that the house had been damaged or was deteriorated extensively from some cause of the nature of termites or dry rot. Upon the advice of their architect, the taxpayers razed the house. In their income tax returns for the year 1929, the taxpayers claimed a deduction totalling $62,854.02 for the loss resulting from the damage by termites or dry rot. The deduction was disallowed by the Commissioner of Internal Revenue.

In 1930, the taxpayers sold the property, without having rebuilt the house for $150,-000. In their returns for the year 1930, the taxpayers reported no gain from the sale of the property, but they now concede a taxable gain of $23,189.25 arrived at by deducting from the sales price ($150,000) the total of the original cost plus the cost of improvements which is $126,810.75. The Commissioner determined that the gain was $71,996.58. In computing the amount to be subtracted from the sales price of $150,000, the Commissioner deducted from the total cost of the property ($126,810.75) the cost of the house and improvements, on the theory that since the house was not sold, it could not be used to increase the cost of the property.

In 1926, taxpayer Will Rogers had income from sources in the United States amounting to $126,699.84 and income from sources in England amounting to $19,922.-51. He paid income taxes on the total income from both sources to the United States for the year 1926. In 1930, the taxpayer paid $5,834.85 in income taxes to England on the income from sources in England in 1926. In his return for the year 1930, the taxpayer claimed a credit for the income taxes paid to England during that year. The Commissioner disallowed the credit. Will Rogers had no income from England in 1930. He did not elect to claim a credit in his return to the

United States for the taxable year 1926, for income taxes accrued in 1926 to England. He filed his returns for the years 1926 to 1930, both inclusive, on the cash receipts and cash disbursements basis. The taxpayers paid the additional taxes due which resulted from the action of the Commissioner, and brought these actions to recover for the alleged overpayments.

The court below held that the taxpayers were not entitled to the deduction for the loss claimed in the returns for the year 1929, because the loss was not sustained from casualty within the meaning of the statute; that the gain from the sale of the property was $23,189.25, because the property should be considered as a single thing and not as separate parts; and that the credit for the income taxes paid to England in 1930 in the return for that year was proper. Judgments were entered accordingly. The United States appeals from those portions of the judgments which grant recovery to the taxpayers in connection with the 1930 returns, and the taxpayers appeal from those portions of the judgments which deny recovery in connection with the 1929 returns, in order to present their contentions in the alternative.

The taxpayers do not contend that they are entitled to deduct the loss in 1929, and compute the gain on the sale of the property in 1930 by deducting the cost of the house and improvements from the sales price. They do contend that they are entitled to one of the two alternatives. The government contends that they are ∼ntitled to neither.

Section 23(e) (3) of the Revenue Act of 1928, 26 U.S.C.A. Int.Rev.Acts, page 357, provides in part:

"In computing net income there shall be allowed as deductions: * * *

"(e) In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise — * * *

"(3) of property not connected with the trade or business, if the loss arises from fires, storms, shipwreck, or other casualty, or from theft."

It is contended here that the loss of the house was a loss from "other casualty". The court below held that as used the word "casualty" included the sense of suddenness which was lacking here, and denied the deduction. We think the trial court was right. There being no contrary intention shown, we must take the word "casualty" as including all the ordinary and accepted meanings. Webster's New Int.Dict., 2d Ed., p. 419, defines "casualty" in part as follows:

"1. Chance; accident; contingency; also, that which comes without design or without being foreseen; an accident * * *

"2. An unfortunate occurrence; a mischance; a mishap; a serious or fatal accident; a disaster * * *"

It can be seen that "casualty" may properly be used in the sense of "accident". The latter word is defined by the same source as "An event that takes place without one's foresight or expectation; an undesigned, sudden, and unexpected event". Showing that casualty may have the sense of suddenness is the definition in 1 Bouv. Law Dict., Rawle's 3d Rev., p. 430, as follows: "Inevitable accident. Unforeseen circumstances not to be guarded against by human agency, and in which man takes no part". Such definition is in accord with that given in Matheson v. Commissioner Of Internal Revenue, 2 Cir., 54 F.2d 537, 539.

Since damage by termites or dry rot is not a sudden occurrence but is a development over a longer period of time we think the deduction was improper.

Regarding the gain on the sale of the property, the following provisions of the Revenue Act of 1928 are pertinent:

"§ 22. (a) 'Gross income' include gains, profits, and income derived from * * * sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property. * * *

"(e) In the case of a sale or other disposition of property, the gain or loss shall be computed as provided in sections 111, 112, and 113." 26 U.S.C.A. Int.Rev.Acts, pages 354, 356.

"§ 111. (a) * * * the gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the basis provided in section 113. * * *

"(d) In the case of a sale or exchange the extent to which the gain or loss determined under this section shall be recognized for the purposes of this title, shall be determined under the provisions of section 112." 26 U.S.C.A. Int.Rev.Acts, page 376.

"§ 112. (a) Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized * * *." 26 U.S.C.A. Int. Rev.Acts, page 377.

"§ 113. (a) The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property * * *." 26 U.S.C.A. Int.Rev. Acts, page 380.

The amount realized from the sale is not in dispute. The gain, according to § 111(a) is the excess of the amount realized over the basis provided in § 113. The latter section says such basis is "the cost of such property." What property? It is the property sold. What property was sold? It was a parcel of land with certain improvements, but without a house. The cost of such property is the amount fixed by the Commissioner, and we think that determination is right.

The trial court thought, and tl taxpayers contend, that when a building is attached to real property it becomes a part thereof, and cannot be separated from the real property, but must be considered as a whole. While that is true for certain purposes, it does not follow that such a rule is applicable here. Cost of the property may be allocated among various things. For example, suppose the taxpayers had sold for $10,000 a part of the ground without improvements. It must be conceded that they did not sustain a loss of the difference between that sum and the cost of the whole property. Actually in such a case the cost of the whole property would be allocated between the part sold and the part retained.

There seem to be no cases bearing on the point involved. The government cites Dayton Co. v. Commissioner, 8 Cir., 90 F.2d 767, but that case deals only with the point as to when a loss occurred.

Respecting the right to the credit for the income tax for 1926 paid to England in 1930, the following provisions of the Revenue Act of 1928 are pertinent:

"§ 131. (a) The tax imposed by this title shall be credited with:

"(1) In the case of a citizen of the United States * * * the amount of any income * * * taxes paid or accrued during the taxable year to any foreign country. * * *

"(b) In no case shall the amount of credit taken under this section exceed the same proportion of the tax (computed on the basis of the taxpayer's net income without the deduction of any income * * * tax any part of which may be allowed to him as a credit by this section), against which such credit is taken, which the taxpayer's net income (computed without the deduction of any such income * * * tax) from sources without the United States bears to his entire net income (computed without such deduction) for the same taxable year. * * *

"(d) The credits provided for in this section may, at the option of the taxpayer and irrespective of the method of accounting employed in keeping his books, be taken in the year in which the taxes of the foreign country * * * accrued * * *." 26 U.S.C.A. Int. Rev.Acts, page 394.

Art. 697 of Regulations 74 promulgated under the act in question, provides in part: "The credit for taxes provided by section 131(a) may ordinarily be taken either in the return for the year in which the taxes accrued or in which the taxes were paid, dependent upon whether the accounts of the taxpayer are kept and his returns filed upon the accrual basis or upon the cash basis. Section 131(d) allows the taxpayer, at his option and irrespective of the method of accounting employed in keeping his books to take such credit for taxes as may be allowable in the return for the year in which the taxes accrued * * *"

It is obvious that the credit is proper under § 131(a) (1) because the income tax was "paid * * * during the taxable year" to a foreign country, unless subdivision (b) denies the credit. The government contends "that a credit for foreign taxes paid may not be allowed in any year in which the taxpayer's income fails to disclose income from foreign sources" and since Will Rogers had no income from England in 1930, no credit may be taken. Assuming, without so deciding, that the government's contention is sound, which we doubt, the presumption of correctness attending the trial court's determination requires affirmance thereof. Subdivision (b) does not speak of income from a "foreign country", but income "from sources without the United States". While it is stipulated that Will Rogers had no income from "England" in 1930, there is no such stipulation regarding "sources

without the United States". It is obvious that income from a foreign country other than England, would be income "from sources without the United States".

The burden is on appellant—the government in this part of the case—to show error. Lynch v. Oregon Lumber Co., 9 Cir., 108 F.2d 283, 285. It has failed to do so. In the absence of any showing that the decision of the court below was wrong, we presume it to be correct. Leftwitch v. Lecanu, 71 U.S. 187, 4 Wall. 187, 189, 18 L.Ed. 388. However, since in our opinion the trial court erred in determining the amount of the gain on the sale of the property, as above indicated, the judgments from which the government appeals must be reversed so that they may be made to conform to our holding on that point.

The judgments from which the taxpayers appeal are affirmed; the judgments from which the government appeals are reversed, and the causes are remanded with directions to enter judgments in accordance with the views herein expressed.

WILBUR, Circuit Judge (dissenting in part).

### Return of 1929 Tax.

I agree with my associates that the trial court was correct in holding that the plaintiffs, in their respective actions, were not entitled to recover on account of the income taxes paid by each of them in the year 1929. A separate judgment was rendered on this count of the complaint in each case. The question raised concerning the tax in that year was the right of the taxpayers to deduct as a casualty the loss resulting from the razing of the house upon the property owned by them because of the damages resulting from dry rot and the depredations of termites. The statute involved,[1] which is quoted in the main opinion, provides for the allowance of "losses from fires, storms or shipwrecks or other casualty". The meaning of the word "casualty" as used in the statute depends upon the context.[2] The doctrine of ejusdem generis requires the statute to be construed as though it read "loss by fires, storms, shipwrecks, or other casualty of the same kind". The similar quality of loss by fire, storm or shipwreck is in the suddenness of the loss, so that the doctrine requires us to interpret the statute as though it read "fires, storms, shipwrecks or other sudden casualty". This view was adopted by the Circuit Court of Appeals for the Second Circuit in a case cited in the main opinion, Matheson v. Commissioner, 54 F.2d 537, 539, and I agree that we should follow that decision because it is correct. In that case the destruction resulted from the depredation of ship worms, or toredo navalis, and iron rust. Here we have an analogous destruction wrought by termites instead of ship worms and dry rot instead of rust.

### Return of 1930 Tax.

The second cause of action in each of the two complaints to recover on account of the alleged over-payment of income taxes to the United States in 1930, resulted in a separate judgment in each case; that for Betty Rogers was for $3,442.13 with interest at 6 per cent from May 10, 1933, and that for the executors of the last will and testament of Will Rogers was for $6,469.33 with interest at 6 per cent on $3,203.65 from July 7, 1933, $1,907.48 from May 10, 1933, and on $1,359.20 from December 15, 1931.

The question of the credit to which the decedent taxpayer Will Rogers, was entitled because of the payment of the foreign income tax by him in 1930 is involved only in the case of the Executors of Will Rogers v. United States and is set up in the second count of the complaint. The majority of the court, without determining the legal question involved in the assertion of the right to the credit, remands the case to the trial court with directions to enter judgments in accordance with the views expressed in the opinion.

As a result of this direction I take it that a judgment will be entered by the lower court in favor of the government on the second cause of action in the suit brought by Betty Rogers and that a judgment for $3,757.40 with interest will be entered in favor of the executors of the estate of Will Rogers. I will state some of the many reasons which in my opinion make this direction erroneous.

---

[1] § 23 (e) (3), Revenue Act 1928, 26 U.S.C.A. Int.Rev.Acts, page 357.

[2] In Helvering v. Hammel, 61 S.Ct. 368, 369, 85 L.Ed. ——, 131 A.L.R. 1481, decided January 6, 1941, by the Supreme Court, it is said: "The term sale may have many meanings, depending on the context, see Webster's International Dictionary. The meaning here depends on the purpose with which it is used in the statute and the legislative history of that use."

Foreign Tax Deduction.

With reference to the right of the taxpayer to deduct in 1930 the amount paid to England in 1930 for income tax for the year 1926 on income of the taxpayer earned in England, I am in accord with the interpretation of statutes and regulations contended for by the government herein. The statute[3] expressly permits the deduction of the foreign tax which was paid or which accrued during the taxable year in which the credit is claimed. Consequently, the taxpayer was permitted to claim his deduction in either 1926 when the tax to England accrued, or in 1930 when it was paid. But the amount of the credit was to be determined by formula set out in the same section, (131 (b) ), which in effect allowed the deduction only to the extent that the United States tax of the taxpayer upon the net income derived by the taxpayer in the United States was increased by the tax upon the net income derived from sources outside the United States.

Omitting parenthetical phrases, subdivision (b) reads as follows: "In no case shall the amount of credit taken under this section exceed the same proportion of the tax * * * against which such credit is taken, which the taxpayer's net income * * * from sources without the United States bears to his entire net income * * * for the same taxable year." Where there is no income from sources without the United States in the taxable year in which the credit is claimed the ratio of such income to his entire net income would be as zero is to that income. We thus have the formula zero[4] over the entire net income times U. S. tax equals credit, which equals zero. Hence, the statutory formula gives no credit against taxes on income in the United States for foreign income taxes for a year in which there is no foreign income.

The executors claim that the credit allowed the taxpayer by § 131, supra, must be determined both by amount of the United States tax and by the ratio of income in the year 1926 when the English tax accrued whether the credit is claimed in that year or in the year when the foreign tax was paid by the taxpayer (1930). That is, the claim of the executors is that the amount of credit is the same no matter when claimed by the taxpayer. The difficulty with this contention lies in the fact that the statute expressly provides that the credit shall be a portion, not of the foreign tax, but of the United States tax "against which such credit is taken", which in the case at bar is the United States tax for 1930. The United States tax of the taxpayer in 1930 was $71,419.-28, while for 1926 it was $27,654.34. Furthermore, the statute expressly provides that the proportion of the United States tax to be allowed as a credit shall be determined for the same taxable year "against which such credit is taken" which I understand to mean "in which such credit is taken". As there are thus two variables in the statutory formula it is almost impossible that the deduction would be the same in the two years in either of which the taxpayer is expressly allowed to claim the credit.

The government properly presents to us its theory of the interpretation of § 131 (b) of the Revenue Act of 1928, supra. It specifies as its points on appeal:

"1. The district court erred in refusing to grant defendant's motion for judgment on pleadings as to the second cause of action of plaintiff's complaint herein.

"2. The district court erred in determining that the second cause of action of plaintiff's complaint herein stated any claim against defendant upon which relief might be granted.

"3. The district court erred in directing the entry of judgment on the second cause of action of plaintiff's complaint herein in favor of plaintiff on the facts as stipulated and admitted by the pleadings."

The sufficiency of the facts alleged and of those stipulated and admitted is thus challenged by the statement of points by which the appellant intended to rely upon appeal. This is sufficient under the new rules.[5]

In my opinion it was error to deny the government's motion for judgment on the pleadings on the second cause of action if the law did not permit a credit for the payment of foreign income taxes in the

3 Revenue Act 1928, § 131 (a) (1), 131 (d), 26 U.S.C.A. Int.Rev.Acts, page 394.

4 $$\frac{0}{\text{total net income}} \times \text{U.S. tax} = 0$$

5 Rule 52, subs. (a) (b); rules 73, 74, 75, 28 U.S.C.A. following section 723c.

**250**

year in which there was no foreign income. I reach this conclusion for two reasons: First, there is no allegation in the complaint that there was any income derived from foreign sources in the year 1930, hence; there was no basis for judgment in favor of the taxpayer. Second, in order to maintain the action it is necessary to show that a claim has been presented to the Commissioner for the refund of the amount claimed to have been overpaid. United States v. Felt & Tarrant Mfg. Co., 283 U.S. 269, 51 S.Ct. 376, 75 L.Ed. 1025. This claim was made upon the theory of the complaint, namely, that the taxpayer was entitled to a proportion of his foreign paid tax based upon the ratio of foreign income and the total income in the year 1926. Having predicated his claim to the commissioner upon that ground he could not be heard to shift his ground if he so desired, that is to say, he could not recover upon the theory that he was entitled to a credit for the tax thus paid a foreign country upon a ratio of foreign income to total income in the year 1930. The applicable rule is thus stated in Dascomb v. McCuen, 2 Cir., 73 F.2d 417, 418, as follows: "Cases too numerous for complete citation have recognized the principle that a taxpayer who brings suit after a refund has been denied can rely for recovery only on facts presented to the Commissioner; it will suffice to cite the following: United States v. Felt & Tarrant Co., 283 U.S. 269, 51 S.Ct. 376, 75 L.Ed. 1025; Weagant v. Bowers, 57 F.2d 679 (C.C.A. 2); Continental-Illinois Nat'l. Bk. & Trust Co. v. United States, 67 F.2d 153 (C.C.A. 7); Snead v. Elmore, 59 F.2d 312 (C.C.A. 5); Taber v. United States, 59 F.2d 568, (C.C.A. 8)." See also, Lewis A. Crosset Co. v. United States, Ct.Cl., 50 F.2d 292; 26 U.S.C.A. Int.Rev.Code, § 3772(a); Act of June 6, 1932, ch. 209, § 1103(a), 47 Stat. 286.

As to the other item in the second count in which the taxpayers each claimed a deduction of $35,000 by reason of the failure to allow a deduction of the cost of the improvements destroyed by termites in determining the gain from sale of property, I agree with my associates that the facts stated do not justify the deduction.

The motion of the government for judgment upon the pleadings on the second cause of action of Betty Rogers should have been granted. In view of the fact that the complaint of the executors against the United States did not state a cause of action for the deduction or for the credit claimed by them the motion for judgment also should have been granted. The denial of these motions is deemed excepted to under the new rules, (Rule 46) and the error is presented in the points on appeal. With reference to the third point on appeal above stated, as to the entry of judgment on the facts stipulated and admitted in the pleading, it is sufficient to say it is unnecessary to consider this point in view of the fact that the complaint does not state a cause of action, but it is also clear that the facts contained in the stipulation do not justify a judgment in favor of the plaintiff because in order to justify such judgment the stipulation and findings must cover the question as to the amount of the income, if any, derived by the taxpayer from foreign sources in 1930 in the absence of an affirmative showing by the plaintiffs as to that issue neither evidence nor findings will support a judgment against the United States. For the reasons stated I cannot agree with my associates that there is a failure on the part of the government to show error on this appeal if we assume as they do for the purpose of the appeal that the law does not authorize a credit in 1930 on account of a foreign income tax paid England in that year if there was no income derived from foreign sources by the taxpayer in 1930. In short, the matter depends upon the construction of § 131 (a) (1), Revenue Act of 1928, 26 U.S.C.A. Int.Rev.Acts, page 394). If, under that section, the amount of credit the taxpayer is permitted to deduct from his income tax is determined by the ratio between the foreign income and the total income in 1926 he should recover. On the other hand, if it depends upon the receipt of income from foreign sources in 1930 he has neither presented such a claim to the commissioner nor alleged it in his complaint, nor shown it in the stipulation of facts.

It should be stated that the action in question is under the Tucker Act, 28 U.S.C.A. § 41(20), and that the findings of the trial court have the effect of a special verdict. The trial court should be directed to enter a judgment upon the findings in favor of the United States upon the second cause of action.

But I cannot agree with the statement in the majority opinion that "* * * the presumption of correctness attending the trial court's determination requires affirmance thereof." I am unable to see how this presumption can be applied to a part

of its findings of fact or conclusions of law with relation to the credit to be given on account of the payment of a foreign income tax where the judgment in which the conclusion is inherent is reversed because of the error of the trial court set out in the majority opinion.

For another reason I think the order of the majority to enter a judgment for the executors is incorrect. It is not contended by either the government in its appeal or the taxpayer in the cross appeal that the judgment is correct or that it should be affirmed because of the failure to show that there was no taxable income derived by Will Rogers from foreign sources during the year 1930. It is assumed in this court as it was in the trial court by both parties that there was no such income in that year.[6] The case ought not to be decided by us on the theory that there was or might have been such foreign income in 1930 without at least giving counsel for the government the right to be heard upon that point before our decision is rendered.

Another reason why the government should not be held to a stipulation interpreted as permitting a recovery upon the theory that the taxpayer had foreign income in 1930, is the way in which the matter was presented to the trial court. It was first presented by motion on the part of the government for judgment on the pleadings in its favor on both counts in the two complaints. The court announced its opinion on September 20, 1939, holding for the government in the first count and against the government on the second count, before the stipulation of facts was entered into.

In disposing of the foreign tax feature (erroneously referred to as the third cause

---

[6] The government states the question involved as follows: "Was Mr. Rogers entitled to a credit for foreign taxes paid in 1930 on 1926 income where he had no foreign income in 1930?"

It argues as follows: "It is clear from the above statute that a credit for foreign taxes paid may not be allowed in any year in which the taxpayer's income fails to disclose income from foreign sources. It is stipulated that Mr. Rogers had no income from England in 1930. The statute clearly applies here, and the lower court was in error in holding that the 1930 tax should be credited with the amount of $3,757.40."

The taxpayer, on the other hand, states the question as follows: "Whether Will Rogers was entitled to a credit against his income tax for 1930 for income taxes paid by him to England during the year 1930 upon income earned by him in England in 1926 and taxed by the United States in 1926?"

The taxpayer's argument in no wise suggests that he is claiming a credit based upon 1930 ratios between foreign and total net income for the year 1930. He argues as follows:

"The government urges that a credit for foreign taxes cannot be allowed unless the taxpayer had income from foreign sources during the year the tax was paid. The law does not so provide but the government contends that Section 131(b), which limits the credit allowable, obtains that result. Taxpayers submit that the government has misconstrued the limitation provision. The law allows a credit, dollar for dollar, against the United States tax for foreign income taxes. If no limi-

tation were imposed, in cases in which the foreign tax rate was higher than the United States tax rate, the United States might be deprived of taxes on income from sources within the United States. To prevent this result the Congress imposed the limitation which limited the credit to the percentage of the United States tax which the foreign income bears to the entire income from all sources. * * *

"If the percentage of credit allowable is based upon the year the income is earned, the result sought by the Congress is accomplished but if, as the government now contends, the percentage is based upon the income of the year in which the foreign tax is paid, the express purpose of the Congress would be defeated. * * *

"There is nothing in the law or the regulations which indicates that it was intended that the amount of the credit to which a taxpayer is entitled for foreign income taxes should depend upon whether he takes the credit on the cash or the accrual basis. It would seem more reasonable and would certainly be more consistent with other provisions of the law to conclude that the Congress intended the amount of the credit to be the same in either case. It is submitted that Congress, in enacting Section 131(b) of the Revenue Act of 1928, intended to limit the credit allowable for foreign income taxes to the percentage which the income taxed bears to the total income of the taxpayer for the year in which the income was earned, and that the interpretation of the law suggested by the government would defeat the obvious purpose of Congress in enacting the law."

of action) the court clearly shows that he was dealing with the ratios of income in 1926 and not of income of 1930. That portion of the opinion is quoted in the footnote:[7]

It is clear from this that the stipulation was prepared after the court had announced its conclusion on the legal question involved and its judgment upon the hypothesis that the parties could agree to the facts as stated in the complaint or as modified.

Moreover, I think the majority opinion does not place a correct interpretation upon the stipulation of facts entered into between the parties as the same relates to the foreign income of 1930. The stipulation of the parties provides that the sum of $3,757.40 shall be allowed as a proper credit if it is held that any credit should be permitted in the year 1930. Mathematical computations show that this amount represents the percentage of the 1926 tax to which the taxpayer would have been entitled as a credit upon the ratios of income for the year 1926.[8] I, therefore, understand the stipulation to mean that if any credit at all is allowed in 1930 it should be the credit determined as the executors claim it should be for the year 1926. This view is confirmed by similar calculations based upon the stipulation as to the amount of income and amount of tax for the year 1930. In order for the taxpayer to be entitled to a credit of $3,757.40 under the statutory formula for the year 1930 it would be necessary that he have an income from foreign sources of $18,095.91.[9] I think it is apparent that the parties did not intend thus indirectly to stipulate to the amount of foreign income of the taxpayer during the year 1930. I think it is clear that they were stipulating that Will Rogers was either entitled to no credit for 1930 or to a credit of $3,757.40 based upon the ratio of income for 1926.

---

[7] "Now, as to the third cause of action, which appears only in 8080-Y, the question there relates to a claim of refund for income taxes paid in England. It is true that the taxes were paid in England in the year 1930, but they were an added assessment as of 1926, and I don't think the law should be interpreted so as to deprive an American citizen, who is compelled to pay income tax here, of the benefit of income taxes paid in a foreign country merely because the payment was in the form of an added assessment which he couldn't foresee at the time during the taxable year when he paid taxes, and which was actually collectible later.

"Otherwise, there was a delay. If he had overlooked filing an income tax, you might say it was his own negligence. He repaid the tax. They demanded more. Not until after 1930, or when the negotiations took place, was he compelled to pay it. He shouldn't be deprived of that by saying, 'It is too bad your 1926 tax year is closed, and I can't give you any reduction.' I think that is a very narrow interpretation, and when we are dealing with allowances for governmental agencies which no one can avoid, no one in the world can avoid, it seems to me that the interpretation should be one that will allow the deduction whenever it is made, provided it is made in good faith.
* * *

"That is my conclusion on the legal questions involved. I am willing to stand on the first one on the motion, and as to the other, if you can agree to the facts, why, you can stipulate them and prepare a judgment I can enter into. As I view it now there is nothing more for trial.

"Mr. Kohlmeier: I think, your Honor, we will be able to agree on the facts now that you have decided on the legal issues.

"Mr. Jewell: I believe we will be able to stipulate the facts.

"The Court: All right.

"For the present I merely grant a motion for judgment on the pleading on the cause of action, one in each of the complaints, and deny it as to others; and then you gentlemen may prepare a judgment based upon the other two counts as to amounts and submit them to me and judgment can be entered later on without further trial."

---

[8] $27,654.34 (U.S. tax for 1926) $\times$ $\dfrac{\$19,922.51 \text{ (foreign income)}}{\$126,699.84 \text{ (U.S. income) plus } \$19,922.51 \text{ (foreign income)}}$ = $3,757.40

[9] $71,419.28 (U.S. tax for 1930, stipulated) $\times$ $\dfrac{\text{foreign income}}{\$343,946.34 \text{ stipulated total income for 1930.}}$ = $3,757.40 stipulated

Hence, the foreign income would be $18,095.91.

The trial court should be instructed to enter a judgment upon the stipulation in favor of the United States on each count of the complaint.