482 A.2d 928

**Carlisle L. EWING**

v.

**Thomas Melton PRICE, Jr.**

**No. 1616, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

Nov. 7, 1984.

314

Laurens MacLure, Jr., Towson, for appellant.

No brief or appearance for appellee.

Argued before GARRITY, ADKINS and ALPERT, JJ.

GARRITY, Judge.

By a memorandum opinion dated December 5, 1983, the Circuit Court for Baltimore County affirmed a decision of the Baltimore County Board of Appeals granting the relocation of a towing business operated by the appellee, Thomas Melton Price, Jr. The appellant, Carlisle L. Ewing, a tower whose towing district was reduced by the relocation, had opposed the Board's decision to revise the license.

On appeal, the appellant renews his contention that the Board misinterpreted the applicable provisions of the Baltimore County Code concerning towing licenses.

### Factual Background

In April of 1982, the appellee, Thomas Melton Price, Jr., trading as Tom's Gas Stop, requested permission of the Chief of Police of Baltimore County to change the location of his towing service. Mr. Price stated in his letter to the police that his leased facility, which had been broken into on numerous occasions and subjected to vandalism, was in the process of being sold. Mr. Price further indicated that after he turned down an offer to purchase the property, he felt forced to move.

On June 9, 1982, pursuant to the authority of the Chief of Police of Baltimore County, the Department of Permits and Licenses of Baltimore County issued a corrected towing license to Thomas M. Price, Jr., now trading as Baltimore Shoreline Towing. The license permitted Mr. Price to change the location of his towing business from 1415 East-

ern Boulevard to 2841 Eastern Boulevard, a distance of approximately two miles.

At this point it is helpful to understand that in 1976, in the aftermath of territorial battles over towing rights, the Baltimore County Police Department and the Association of Licensed Towers of Baltimore County, devised a color-coded street map that designated the districts of all licensed towing companies in that county. Under present policy, a towing company is authorized to tow only those vehicles located within its district, unless called beyond its borders by a private party. Whenever the police department requires a vehicle to be removed from a highway, it notifies the nearest licensed tower in that particular area. To obtain a "new" license to operate a towing business in a district, the need for additional service must be found to exist. Once the license has been granted, however, that business may be transferred anywhere within Baltimore County regardless of the need for additional service within the new district. Upon confirmation that the relocated business meets certain physical and equipment requirements such as proper fencing, storage space, and vehicle lettering to indicate the new address, license transfers are approved by the Chief of Police of Baltimore County.

The granting of a transfer of the appellee's towing business to its new location caused a domino effect on the boundary lines designating the areas of all towing companies in the vicinity. As a result of the relocation, appellee's new towing business, Baltimore Shoreline Towing, was granted a significant portion of the area which had been previously designated as the exclusive area of the ousted appellant.

Aggrieved by the decision of the chief of police to permit the transfer of the appellee's towing license, Carlisle L. Ewing and the Association of Licensed Towers of Baltimore County, filed an Order of Appeal with the Board of Appeals of Baltimore County. At the hearing before the Board of Appeals, Officer Harry W. Owings explained the manner in

which towing districts in Baltimore County are determined. He also testified that upon receipt of the appellee's relocation request, which he determined to have been caused by a casualty loss, he personally investigated the appropriateness of granting the request. In that regard, he inspected the new location and found that all Baltimore County requirements, with the exception of a showing of need, which he did not consider, had been met. Officer Owings explained that in 1976, he was verbally advised by the Baltimore County Solicitor's Office that the element of need was to be considered only when evaluating the issuance of a "new" license.[1]

In its opinion, the Board of Appeals stated:

Appellants claim that Article 5, Sections 17–58(c) and 17–63(a) designate that "need" must be a consideration, not only in the issuance of new licenses but also the transfer of existing ones. This is the basic issue the Board must address in this Opinion.

Article 5, Section 17–58(c) addresses the change of location of a business and the final sentence of this section states: "The new location must meet all the requirements of this article, or the license will be cancelled." Section 17–63(a) states: "New license towers shall be approved by the chief of police based upon the need for additional service. If the need does not exist, the application will not be approved." There is no argument that "need", as evidenced by police department reports, must be the primary consideration for the issuance of a new towers license. Section 17–58(c) deals, however, with relocation of a business, not through choice, but with no other recourse. It also notes that the new location must meet all the requirements of this

---

1. At the conclusion of the hearing before the Board of Appeals, Assistant Solicitor, Thomas J. Bollinger indicated that it was the Solicitor's decision not to render an opinion on the issue of need. We further note that the Solicitor for Baltimore County has not participated in this appeal.

article, all of which have been met in this case with the exception of the evidence of "need."

.    .    .    .    .

The chief of police's primary consideration in these matters must be his officers at the scene of an accident and to see that they are served. To cancel the license of a towing operator who is forced to relocate, who meets all the requirements, has apparently served the police department well, and who at some time has evidenced "need" to get his license, merely because it reduces the area of another would seem to this Board to be arbitrary at the least. Section 17–66 states: "The chief of police shall have the power to make and enforce any and all *reasonable* regulations to effectuate the purposes of this article." (Emphasis added).

The Board is of the opinion that when the requirements of Section 17–58(c) have been met, and only when these requirements are met, that under Section 17–66 the chief of police does not have to consider "need" in the transfer of a license, but can order the towing area division lines redrawn to provide proper service to the officers in need of the towing service, which is the ultimate aim of the entire article.

Contending that the Board of Appeals misinterpreted Section 17–58(c) of the Baltimore County Code as permitting a towing operator who has suffered a "substantial casualty loss" to relocate his business without first being required to show the existence of need, the appellant noted an appeal.

On appeal to the Circuit Court for Baltimore County, the court held:

... The Board's finding that Mr. Price's loss of his lease due to circumstances beyond his control was a substantial casualty loss was a reasonable one.

.    .    .    .    .

... Proper statutory construction requires that "need" be interpreted as the overall need of the people of Baltimore County for towing service. This need is based on a countywide determination as to the total number of tow-

ers to perform that service adequately.... Where there is an application for relocation, the issue of need does not arise under the statute because there has not been a change in the number of licensees. Once the physical requirements of the statute are met at the new location, it then becomes an administrative determination by the Chief of Police as to how to reassign the areas of operation of the affected licensees so as to maintain proper countywide service for the citizens. This may result in an economic enhancement to one tower and a detriment to another. However, unless it can be shown that the Chief of Police acted arbitrarily or improperly in the assignment of these areas, there can be no abuse of the authority given under the statute.

The Court is not unmindful that, as the statute is presently written, the Chief of Police of Baltimore County may ignore the economic considerations of individual towers. It may be necessary that there be administrative or legislative review of the potential hardship that may result to a tower, as in this case. However, it is not for the Court to change the existing law.

On appeal, we are asked to decide the following questions:

1. Does the loss of one's lease constitute a "substantial casualty loss?"

2. Did the Board of Appeals err in granting a transfer of the appellee's towing license in the absence of any evidence that there was a need for another tower in the area to which the appellee relocated?

## I. *Definition of Casualty Loss*

As previously noted, in affirming the Board of Appeals decision, the Circuit Court held that the Board's finding that the appellee's loss was a "substantial casualty loss" was a reasonable one.

The appellant contends that the Circuit Court and the Board of Appeals erred in ruling that appellee's loss of his lease constituted a "substantial casualty loss" within the

meaning of the Code provision. In its opinion, the court did not discuss this term; the court, however, applied the definition found in *Black's Law Dictionary* (5th Ed.) that the term "casualty" means "misfortune or mishap; that which comes by chance or without design."

The appellant challenges the application of this definition to the facts of the present case, wherein the purported casualty was the loss of a commercial lease.[2] The appellant asserts that the loss of a commercial lease is "entirely forseeable, in fact, inevitable, and a common occurrence," and not unforseeable, sudden, or accidental.

The case law interpreting the terms, "casualty," "casualty loss" and "substantial," supports the appellant's contention. Although no reported Maryland appellate decision has interpreted the terms, "substantial casualty loss" or "casualty loss," a considerable body of federal and sister state case law is available.

Most of the cases interpreting the term, "casualty," involve determinations as to whether a taxpayer can take a deduction arising from a casualty. In *United States v. Rogers*, 120 F.2d 244 (9th Cir.1941), the Court said that "casualty" may properly be used in the sense of "accident," and that an accident is "an event that takes place without one's foresight or expectation; an undesigned, sudden, and unexpected event." *Id.* at 246. Similarly, the Court in *Fay v. Helvering*, 120 F.2d 253 (2d Cir.1941), stated that the word "casualty" denotes "an accident, a mishap, some sudden invasion by a hostile agency." *Id.* at 253. In *Tank v. Comm. of Int. Rev.*, 270 F.2d 477 (6th Cir.1959), the Court permitted the taxpayers involved to take a deduction for a casualty loss for damage to the taxpayer's house due to a sudden slippage of land toward a river adjoining the taxpayer's property. In its opinion, the Court noted that the term, "casualty," has been defined as "an accident resulting from

---

**2.** The Board of Appeals and the Circuit Court, in their opinions, discussed only the sale of the appellee's leased property and the loss of his lease. No mention was made of the vandalism problem raised in the appellee's letter to the chief of police.

an unknown cause and occurring unexpectedly, suddenly, without being foreseen and without design." *Id.* at 482.

Although most cases in which the courts have upheld claims for losses occasioned by casualties have involved "natural physical forces," there is some precedent for the contention that a casualty loss may be due to the intervention of a human agency. *Shearer v. Anderson,* 16 F.2d 995 (2d Cir.1927). Even when the casualty involved emanates from some human force, however, the resulting loss must still be characterized as sudden, unforeseen, or unusual. *Banker's Mutual Casualty Co. v. First Nat'l Bank,* 131 Iowa 456, 108 N.W. 1046, 1048 (1906).

The more specific term, "casualty loss," was used by the Ninth Circuit Court of Appeals in *Squirt Co. v. Comm. of Internal Rev.,* 423 F.2d 710, 711 (9th Cir.1970). The Court held that although a rehabilitation expense necessary to return citrus land to its usable state after a freeze would be allowable as a "casualty loss," the general decrease in the value of the land, because of the fact that persons would be less likely to invest in citrus raising projects on account of the freeze, was not a "casualty loss" for income tax purposes. *See also Meersman v. United States,* 244 F.Supp. 278, 279 (M.D.Tenn.1965), rejecting gradual destruction of clothing by insects as a casualty loss, and *District of Columbia v. Pierce Assoc.,* 462 A.2d 1129, 1131 (D.C.App. 1983), characterizing flood damage as a casualty loss analogous to a forced sale.

We have found no reported decision that discusses whether the loss of a commercial lease may constitute a casualty loss. In a reported opinion by a Pennsylvania court, however, it was held that the condemnation of a leased building after notice was not a "casualty" that would terminate the lease and end the landlord's obligations to the tenant. Citing *Stieffen v. Darling,* 158 Va. 375, 163 S.E. 353 (1932), the Pennsylvania court determined that the condemnation was not a casualty because it was not an event which comes by chance, or an accident of like character and operation, as a fire. *Frangie v. Solomon,* 7 Pa.D. & C.2d 394, 398 (1955).

The term, "substantial," has previously been defined by this Court. In *Hepple v. State,* 31 Md.App. 525, 531, 358 A.2d 283 (1976), we quoted from the *American Heritage Dictionary,* and defined "substantial" as "considerable in importance, value, degree, amount or extent."

Applying the above-cited definitions to the present case, we hold that a "substantial casualty loss" is a considerable decrease in importance or value attributable to a sudden, unforeseeable intervention by an outside agency. In this case, there is nothing in the record to indicate that the sale of the appellee's leasehold was sudden and unforeseeable. Moreover, it appears that the appellee was given an opportunity to remain at his former location by purchasing the property. For reasons considered by him to be sufficient, he declined this opportunity. In the absence of evidence of a substantial casualty loss, we believe that both the Board of Appeals and the Circuit Court were incorrect in assigning that characterization to the reason why Mr. Price decided to relocate his towing business.

## II. *Construction of Title 17, Article V, Section 17–58(c) of the Baltimore County Code*

Baltimore County regulates the towing business within its jurisdiction in accordance with the policy set forth in the Baltimore County Code Title 17, Article V, § 17–57 (1978 ed.), which states:

> For the purpose of protecting the general welfare and public interests of the community, safeguarding the public interests against fraud, discrimination, deception and similar abuses, and eliminating the retarding of traffic, unnecessary street congestion, unnecessary delays and traffic hazards, the towing of vehicles disabled by collision or other accidents shall be subject to supervision and administrative control in Baltimore County.

In order to facilitate this public purpose, the county, through its police department, controls the geographic distribution of towing businesses throughout its boundaries.

The procedure by which a licensed towing business may seek to change its location is set forth in Section 17–58(c) of the Baltimore County Code. That section of the Code provides:

No licensee shall change the location of his business unless such relocation is occasioned by a substantial casualty loss of such location including acts of God without notifying the chief of police at least sixty (60) days in advance of such change. The new location must meet all requirements of this article, or the license will be cancelled.

Because of the absence of punctuation or of any clarifying language, the subsection could be paraphrased as follows:

Except in the event of a substantial casualty loss of the location of his business, no licensee shall change that location. Even in the event of a substantial casualty loss, the location shall not be changed unless the licensee notifies the chief of police at least sixty days in advance of the change. The new location must meet all requirements of this article, or the license will be cancelled.

Read in that light, as apparently the Board of Appeals had, the statute would prohibit any change of location except when there had been a substantial casualty loss. We believe that interpretation to be untenable and inconsistent with the very purpose of the statute. If a tower could not change his location unless he first sustained a casualty loss, such a restriction would severely impede the economic and geographical distribution of towing businesses. Furthermore, if the tower could not change his location until 60 days after the loss, service to the general public would be needlessly thwarted.

██ On the other hand, with the insertion of a few well chosen commas within its present language form, the subsection would stand in harmony with the overall purpose of the statute:

No licensee shall change the location of his business[,] unless such relocation is occasioned by substantial casual-

ty loss of such location including acts of God[,] without notifying the chief of police at least sixty days in advance of such change. The new location must meet all requirements of this article, or the license will be cancelled.

Under this reading, any licensee seeking to change the location of his business must notify the chief of police sixty days in advance except in the case of a substantial casualty loss, in which event he may change the location without advance notice. In either situation, however, the new location must meet all requirements of the article; otherwise, the license is subject to cancellation. That is, the chief of police may reject a voluntary application for change or cancel a license after a casualty loss change, if he finds that all requirements of the article are not met.

■ We believe that this is a more reasonable reading of the subsection than the one advanced by the Board of Appeals and affirmed by the Circuit Court. Under it, however, the new location is subject to the need criterion. It seems rather clear to us that a finding of need is not only necessary in order to maintain the economic incentive and security of licensed towers, but also to meet the general regulatory purposes of the Baltimore County Code with respect to all towers. We believe that the Board and the Circuit Court were in error in disregarding the criterion of need as to the relocation of towing licenses from one district to another. The last sentence of the subsection is not ambiguous. It plainly states that the "new location must meet *all* requirements of this article" (emphasis supplied). One of those requirements is that "need for additional service" must be found to exist by the chief of police.

The elimination of the requirement of need when reviewing an application for the transfer of an existing towing license effectively eliminates that standard from the statute altogether. As an example, assume that there exists an area within Baltimore County with a high use of towing operators or some other advantageous feature. A new tower could apply for a license in some needy but less desirable location within Baltimore County, and then relo-

cate into the more desirable area if need were no longer a factor once a license had been obtained.  In effect, the need requirement could then be circumvented at will, absent a consistent application of the statute to all existing license holders and new applicants.

We hold that in Baltimore County, whether a licensee changes the location of his business because of a casualty loss or of his own violation upon giving 60 days notice to the chief of police, the new location must meet all the requirements of Title 17, Article V, including the need requirement under Section 17–63(a).  Otherwise, the license is subject to cancellation.

As the record established that the police officials, acting on behalf of the Chief of Police of Baltimore County, when considering the appellee's application to move to a new location, did not consider need, we shall remand this matter to the Circuit Court for Baltimore County for referral to the Board of Appeals so that evidence may be taken and findings made by the Board on the need issue.  The record shows that all other criteria of the article were met.

JUDGMENT REVERSED.

CASE REMANDED TO CIRCUIT COURT FOR PROCEEDINGS IN ACCORDANCE WITH THIS OPINION.

COSTS TO BE PAID BY APPELLEE.