*Decision will be entered under Rule 50.*

E. G. KILROE AND FRANCES H. KILROE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 73257.  Filed September 29, 1959.

*Irving M. Felder, Esq.,* for the petitioners.
*Louis J. DeReuil, Esq.,* for the respondent.

FISHER, *Judge:* Respondent determined a deficiency in income tax against petitioners for the taxable year 1955 in the amount of $465.13.

The issues presented for our consideration herein are: Whether petitioners are entitled to deduct a loss resulting from termite damage to their personal residence as a casualty loss within the meaning of section 165 (c) (3) of the Code of 1954; whether the loss, if allowed, is deductible for the year 1955; and the amount of the loss allowable.

## FINDINGS OF FACT.

Some of the facts are stipulated, and, as stipulated, are incorporated herein by reference.

E. G. and Frances H. Kilroe, sometimes hereinafter referred to as petitioners, were, in the year 1955, and are at the present time, husband and wife, residing at 1101 Palmer Avenue, Winter Park, Florida.

Petitioners each filed a separate individual income tax return for the taxable year 1955 with the district director of internal revenue at Jacksonville, Florida. On January 19, 1957, petitioners filed an amended joint return for 1955 with said district director.

Petitioners purchased their residence, located at 1101 Palmer Avenue, Winter Park, Florida, in May 1953. At that time, it was about 20 years old. The residence is constructed of stucco on wood. Before said residence was purchased, petitioners sought a bank loan, and the bank obtained the Rudler Exterminating Company, Inc., to inspect the house for termites. In May 1953, petitioners' residence was inspected by said company. At that time, the company found some old termite damage in the northwest corner of the residence but reported the house in sound condition.

Thereafter, on December 11, 1953, petitioners executed a 5-year contract guaranty bond with Orkin Exterminating Company of Florida, Inc. (hereinafter called Orkin), which called for an initial termite treatment together with five annual termite inspections. On January 9, 1954, petitioners' residence was termite inspected by Orkin and treated. Again, on January 19, 1955, petitioners' residence was inspected for termites by said company.

In February or March of 1955, E. G. Kilroe, hereinafter called petitioner, noticed that some plaster had fallen from the wall in the kitchen. He removed some of the loose plaster under the kitchen window and noticed that some plastering would have to be done. Petitioner did not see any termite activity from the exposure that was made.

About 10 days or 2 weeks later, a contractor came to petitioner's home, pulled some more plaster from the wall, and advised petitioner that the plaster had fallen as a result of termite damage. Petitioner did not see any termite activity at that time.

Subsequently, in April 1955, several workers cut away the outside wall near the kitchen window. Approximately 20 feet of the north wall, about 12 feet of the east wall up to the height of the kitchen ceiling, the kitchen floor, and the cabinets in the kitchen were torn out. Fresh termite channels were found at that time.

Prior to the latter part of April 1955, there was no exterior evidence of termite damage. Petitioner never saw a moving termite either inside or outside of the house.

Petitioner was familiar with termite activity at the homes of several acquaintances in the local area, and also had personal experience with termite infestation while living in India.

Petitioners, on their separate income tax returns for 1955, and as reflected in their amended joint return for 1955, deducted the amount of $2,042.88, which had been expended by them for repairs resulting from damage done by termites. Respondent, in his statutory notice, disallowed the full amount of said deduction.

Petitioners, in 1955, sustained a casualty loss from termites in the amount of $2,042.88.

OPINION.

Respondent contends that there was no "casualty" within the intendment of section 165(c)(3) of the Code of 1954,[1] on the grounds that the element of suddenness with respect to the alleged termite invasion and resulting damage is absent; that the loss, if any, did not occur in the taxable year 1955; and that the amount of the claimed loss has not been established. In essence, it is respondent's position that the termite infestation and resultant damage involved herein occurred over a long period of time and hence lacks the requisite element of suddenness. Petitioners, on the other hand, urge that the initial invasion and subsequent damage occurred in a relatively short period of time during the early part of the taxable year 1955.

The term "suddenness" is comparative, and gives rise to an issue of fact under circumstances which may exist in a variety of backgrounds in respect of which the rapidity and detection of the damage may vary considerably, depending on the nature of the hostile operating force and the surrounding circumstances of the particular case. In some of the cases involving termite losses, the claimed de-

---

[1] SEC. 165. LOSSES.

(c) LIMITATION ON LOSSES OF INDIVIDUALS.—In the case of an individual, the deduction under subsection (a) shall be limited to—

*　　　*　　　*　　　*　　　*

(3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. * * *

ductions were disallowed, *Charles J. Fay*, 42 B.T.A. 206 (1940), affd. 120 F. 2d 253 (C.A. 2, 1941); *United States* v. *Rogers*, 120 F. 2d 244 (C.A. 9, 1941). In others they were allowed, *Rosenberg* v. *Commissioner*, 198 F. 2d 46 (C.A. 8, 1952), reversing 16 T.C. 1360 (1951); *Shopmaker* v. *United States*, 119 F. Supp. 705 (E.D. Mo. 1953). For a comprehensive discussion of those cases, *inter alia*, see *Leslie C. Dodge*, 25 T.C. 1022 (1956).

In *Rosenberg*, *supra*, which held that the loss was allowable, the court stated that it agreed with the views of the Ninth and Second Circuits in the *Rogers* and *Fay* cases that in order to come within the definition of "other casualty," as that term is used in the statute, "the occurrence must be sudden," but distinguished those cases on the ground that therein there was a lack of demonstrated suddenness of the losses. Emphasizing that suddenness is a comparative term, the court stated (p. 51):

Comparatively speaking, an invasion of a colony of termites which destroys the timbers of a building in a month, three months, or a year, is a sudden destruction, when from natural depreciation it would have required from 25 to 50 years or longer for them to have been substantially injured. * * *

Likewise, in *Shopmaker* v. *United States*, *supra*, an inspection of residential premises at the time of purchase in December 1949 did not disclose the presence of termites. No termites were found in the premises during 1950. In February 1951, termites appeared in the house. Holding that the facts brought the case within the scope of the *Rosenberg* decision, and that a loss deduction was allowable, the court went further and said (p. 706):

We are impressed with the argument of plaintiffs that the casualty is the invasion of the premises by termites. This is a comparatively quick or sudden operation. The resultant damage which may extend over a period of months or years flows from the casualty. The damage and the time it takes for the termites to effect it should not be confused with their initial invasion and determining what is the casualty. * * *

More recently, in *Buist* v. *United States*, 164 F. Supp. 218 (E.D. S.C. 1958), the taxpayer bought a summer beach cottage in 1939. In the spring or early summer of 1953, an inspection of the premises did not disclose the presence of termites or termite damage. In June of 1954, an inspection showed that the house was under heavy attack by termites. The court found that there were no termites in the house during the summer of 1953, and between that time and June of 1954, when the house was suddenly attacked by swarms of termites. Holding that the facts of the case brought it within the ambit of the *Rosenberg* and *Shopmaker* cases, both *supra*, the court concluded (p. 220):

When termite damage occurs in a short period of time, as it did in this case, the element of suddenness is present, so that the loss resulting therefrom constitutes a casualty within the meaning of the law.

In Technical Information Release, No. 142, dated March 13, 1959, the Internal Revenue Service has announced its present policy of allowing deduction on account of such losses when "the termite infestation and subsequent damage * * * occurred in relatively short periods of time," and of disallowing such deductions when "the termite infestation and subsequent damage occurred over periods of several years." The release further announces that the Service will follow *Buist* v. *United States, supra.* See, to the same effect, Rev. Rul. 59–277, I.R.B. 1959–35, p. 8.

Respondent, however, takes the position that the instant case is distinguishable from the *Rosenberg, Shopmaker,* and *Buist* line of decisions and is controlled by the *Rogers, Fay,* and *Dodge* cases, claiming that petitioner has failed to prove that the termite infestation and damage incident thereto occurred in a relatively short period of time and during the year 1955. It is our view, however, that unlike the instant proceeding, in each of the cases relied upon by respondent, the facts showed the requisite element of suddenness was lacking.

Here, the record shows that in 1953, when petitioners sought a bank loan in order to purchase the house in question, the bank obtained a qualified termite exterminating company to inspect the property to verify that the premises were free from active termites. In May 1953, said house was examined and the exterminating company discovered some "old termite damage" in the northwest corner of the house, but reported the house in sound condition. Mindful that termites were indigenous to the locale of said property, petitioners took special precautions to guard against possible infestation by hiring a termite control company to make annual inspections under a 5-year contract, which extended from January 1954. On January 9, 1954, petitioners' residence was inspected by Orkin, the exterminator company, and treated. Again, on January 19, 1955, petitioners' residence was termite inspected by said company. During this entire period there was no exterior evidence of termite infestation or damage. A month later, in February 1955, petitioners noticed that plaster had fallen from the wall below the kitchen window located in the northwest corner of the house. In the latter part of April, upon opening the wall, termite activity and damage were discovered.

Respondent suggests, on brief, that since the damaged area of the kitchen lies partially on the same wall, i.e., the north wall, which adjoined the old termite damage discovered in 1953, petitioners, upon opening the kitchen wall in April 1955 merely discovered old termite damage which may have existed at the time the portion of the northwest corner of the house was damaged prior to May 1953, when the first inspection was made at the behest of the bank. We

think the evidence, including the stipulation, effectively negatives this view since fresh termite channels were found in April 1955. Respondent has offered no evidence in support of his suggestion.

We are aware, of course, that the fact that there were annual inspections of the premises by the exterminating company does not establish with certainty the absence of either termite activity or damage at the time of the inspections. Such inspections are hardly foolproof, but they tend to corroborate the view that the infestation of termites in question occurred after January 1955, especially when considered in the light of the stipulated fact that there was no exterior evidence of damage prior to the latter part of April 1955. Moreover, while Kilroe admittedly never saw a moving termite inside or outside of his house prior to or during April 1955, he testified unequivocally that when the kitchen wall was opened by the contractors in the latter part of April 1955, he found moist runways or "fresh channels" where live termites had been moving recently.[2] We find his testimony in this respect convincing.

We recognize that it was impractical for petitioner to have ascertained the precise moment of the initial invasion of the termites into the premises since the termite damage was concealed. Under the circumstances, we would hardly expect the taxpayer to pinpoint the date of invasion with exactitude. Nevertheless, we are not barred thereby from examining into the attendant circumstances. Bearing in mind the fact that an inspection had been made in 1953 when the house was purchased and that annual inspections were made of the premises each year thereafter, the last having been made in January 1955—about 3 months before the discovery of the termite damage in question—plus the fact that there had been no exterior evidence of termite activity and that there were "fresh channels" in the kitchen wall and floor, we are persuaded that the time within which the damage or loss occurred was within a relatively short time prior to discovery in 1955. From the record as a whole, we conclude that there was no termite activity in petitioners' house between May 1953 and January 1955, and that the petitioners are entitled to a casualty loss deduction for the damage in question. *Rosenberg* v. *Commissioner*, *supra; Buist* v. *United States, supra.*

---

[2] As to what petitioner observed with respect to termite infestation in April 1955, on pages 17 and 18 of the transcript he testified as follows:

"The channels of which I am speaking which were hard, that is, not broken into dust, were channels of live termites because if they do not carry up the moisture into those channels the channels break into dust. Now, when you say channels of inactive termites, their channels break away unless they are active termites continuously moving through those channels." Later, on page 21, he testified further: "I cannot remember ever seeing a moving termite outside the house or inside the house. What I could see was their fresh channels because nobody would go to look for termites after axes and electric saws had been used on the building. The termites are by then all underground."

Respondent relies on our decision in *Leslie C. Dodge, supra*, wherein we held that the element of suddenness was lacking and that the time of invasion by the termites had not been established. We believe that *Dodge* is distinguishable on the facts and is not controlling here. In *Dodge*, the taxpayers purchased their residence about the year 1930 and in the year 1944 noticed that termites had eaten through the floor of the den in their home when they appeared in large numbers on the carpet. Repairs were made and the woodwork under the floors treated. Annual inspections were made by an exterminating company under a contract which extended from the year 1944 through the year 1948. As no termite damage was found during said period, the taxpayers concluded that the termites had been exterminated and did not renew the contract for annual inspections. Four years later, in about February 1952, the taxpayers again noticed that termites had appeared in large numbers on the floor of the den in their residence and extensive damage was done to the woodwork under the den, kitchen, and a part of the dining room. Unlike *Dodge*, in the instant case annual inspections were made by a termite control company, the last one having been made only a few months before the discovery of the damage, which was limited to the kitchen area of the house.

Turning to the year of the casualty loss in question, respondent contends that the "extensiveness" of the damage involved precludes a finding that the damage could have occurred in any portion of the taxable year 1955. Section 165 (a) of the 1954 Code provides that in computing income there shall be permitted deduction of individual losses "sustained during the taxable year and not compensated for by insurance or otherwise." Respondent's proposed interpretative regulations, section 1.165-1, promulgated pursuant to this section, require such loss to be evidenced "by closed and completed transactions, fixed by identifiable events, bona fide and actually sustained during the taxable period for which allowed." Whether the loss which the taxpayer seeks to deduct is deductible during a taxable year is primarily a question of fact controlled by the circumstances in the particular case. *Boehm* v. *Commissioner*, 326 U.S. 287, 292 (1945), rehearing denied 326 U.S. 811 (1946).

Considering the unusual circumstances of the loss involved herein, we believe that the general requirement that losses be deductible in the year in which they are sustained calls for a practical test. *Lucas* v. *American Code Co.*, 280 U.S. 445 (1930). Admittedly, the damage was substantial. At the same time, the fresh channels found at the time the damage was discovered and the failure to find evidence of termite activity prior thereto support the view of recency. Respondent offered no opinion or other evidence supporting a contrary view. In fixing the year in which the loss was sustained, we may rely upon circumstantial evidence, which we think supports petitioner's position.

While the matter is not entirely free from doubt, because of the concealed character of the termite activity involved, the preventive measures taken by petitioner to guard against termite infestation, the fact that there was no exterior evidence of damage, and the failure to find termite activity until after January of 1955, persuade us to resolve the issue in favor of petitioners. We hold, therefore, that the loss in controversy was sustained entirely in the taxable year 1955.

With respect to the amount of loss suffered by petitioners, under section 165(c)(3), the proper measure of the damages to the residence is the difference between the fair market value of the property immediately preceding the casualty and the fair market value immediately thereafter, but not in excess of the adjusted basis of the property, diminished by any insurance recovery. *Helvering* v. *Owens*, 305 U.S. 468 (1939) ; *W. F. Harmon*, 13 T.C. 373 (1949).

At the outset, we note that there is no evidence as to whether, or to what extent, petitioners were compensated by insurance or otherwise for the damage to their property. However, as the parties have tried the case as though petitioners received no compensation, we will proceed herein on the assumption that none was received. *Clarence A. Peterson*, 30 T.C. 660, 663 (1958), on appeal (C.A. 9, Sept. 23, 1958).

Respondent contends that petitioners have failed to establish a loss in the amount of $2,042.88. Respondent's determination is, of course, prima facie correct, and the burden of proof is upon petitioners to establish both the fact and the amount of a deductible loss. *Burnet* v. *Houston*, 283 U.S. 223 (1931).

Petitioner testified that he spent a little over $2,000 for repairs to his residence resulting from the damage done by termites. The stipulation shows the amount expended to have been $2,042.88. Although petitioner has not directly proved the fair market value of the house immediately preceding the casualty and the fair market value thereafter, we think it reasonable to infer that the fair market value of a termite-infested house would be reduced, as a result of such infestation, to an extent at least equal to the actual expense of repair and replacement. See *Buist* v. *United States, supra*. It is clear, also, that this amount did not exceed the adjusted basis of the property. Respondent has offered no testimony in refutation of that of petitioner, and we find no reason to disregard petitioner's testimony. Accordingly, petitioner is sustained. *Blackmer* v. *Commissioner*, 70 F. 2d 255 (C.A. 2, 1934).

Reviewed by the Court.

*Decision will be entered under Rule 50.*

1312

TIETJENS, *J.*, concurring: Unless we are willing to hold that termite damage can never be a "casualty," the result reached here is correct on the facts.

---

TURNER, *J.*, dissenting: In my opinion, it is of common knowledge and notorious that there is no such thing as sudden loss or damage from termites, and under the rule of *ejusdem generis*, a loss represented by termite damage is not a casualty loss within the meaning of section 165(c)(3) of the Internal Revenue Code of 1954 or section 23(e)(3) of the Internal Revenue Code of 1939, the language of the two sections being identical. We so held as far back as 1940, in *Charles J. Fay*, 42 B.T.A. 206, affirmed by the United States Court of Appeals for the Second Circuit at 120 F. 2d 253. In affirming the *Fay* case, the Circuit Court cited with approval the opinion of the Court of Appeals for the Ninth Circuit in *United States* v. *Rogers*, at 120 F. 2d 244, wherein that court applied the doctrine of *ejusdem generis* to the effect that the statute must be construed as though it read "loss by fires, storms, shipwrecks, or other casualty of the same kind."

In *Martin A. Rosenberg*, 16 T.C. 1360, we followed our prior holding in *Charles J. Fay*, *supra*, with the support of the affirmance by the Court of Appeals for the Second Circuit, and the opinion of the Court of Appeals for the Ninth Circuit in *United States* v. *Rogers*, *supra*. In reversing the *Rosenberg* case, 198 F. 2d 46, the Court of Appeals for the Eighth Circuit attempted to distinguish the *Fay* and *Rogers* cases, by concluding that the facts in that case, unlike the facts in the *Fay* and *Rogers* cases, disclosed a suddenness of the termite damage which would bring the *Rosenberg* case within the reasoning of the *Fay* and *Rogers* cases. In my opinion, the Circuit Court completely and wholly misconstrued the facts, in that in order to find substance to its conclusion of suddenness, it departed from the facts relating to the occurrence of damage and attempted to apply the statute to the discovery of the damage. Very plainly, the right to the deduction does not turn upon the discovery of damage, but upon the occurrence thereof.

Similarly, in the instant case the findings as I view them contradict rather than support a conclusion of the suddenness of the termite damage. The only event reasonably shown as sudden by the facts was the discovery that the damage had already occurred and not the occurrence of the damage itself, the expressed conclusion being that the damage had occurred sometime between January 1 and actual discovery thereof in April. Furthermore, the disclosure, upon examination, of old channels as well as current channels was indicative that

the damage had been steady and gradual over a long period of time. The existence of the fresh channels merely disclosed where the current activity was going on. Furthermore, since the termites operate within planks, timbers, or beams, and there being no showing that their periodic swarmings are necessarily in the vicinity of their wood-eating operations, the fact that the petitioner never saw a moving termite inside or outside his house prior to April is of no importance.

In view of the fact, therefore, that the Eighth Circuit Court of Appeals in the *Rosenberg* case accepted the interpretation of the statute as declared in the *Fay* and *Rogers* cases, and this Court in its opinion in the instant case does not pointedly depart from that construction, it is my opinion that the facts require a result contrary from that reached.

In conclusion, however, it might be said that the respondent, in the Department of Agriculture, undoubtedly has at hand and could call as witnesses the leading authorities on termites and their activities, and if it is to be his policy to continue to press cases such as this to decision, it would seem desirable that he call those experts as witnesses, and put to rest any and all questions of fact as to whether or not there could be any substantial damage occasioned by termites with a suddenness comparable to that caused by fire, storm, shipwreck, or other casualty of the same kind. And in the absence of such rebuttal of testimony, as was the situation here, he should either reconsider his administrative position with respect to the applicability of the sections involved to such losses, or should ask Congress to expand the statute.

MURDOCK, HARRON, and RAUM, *JJ.*, agree with this dissent.

----

ATKINS, *J.*, dissenting: It is my opinion that this Court, in *Charles J. Fay*, 42 B.T.A. 206, and *Martin A. Rosenberg*, 16 T.C. 1360, and the Courts of Appeals of the Ninth Circuit and the Second Circuit in *United States* v. *Rogers*, 120 F. 2d 244, and *Fay* v. *Helvering*, 120 F. 2d 253, respectively, properly held that termite damage does not constitute a casualty loss, inasmuch as it represents the progressive deterioration of property through a steadily operating cause and does not result from some sudden cause or accident which is unforeseeable and not preventable. There is no logical basis for holding that in some cases termite damage constitutes a casualty loss and that in some it does not. If termite damage is properly deductible as a casualty loss, it should be allowed in every case, provided, of course, that it is reasonably shown that the loss was sustained in the taxable year involved. Periodic inspections for termite damage would be important

for this purpose, but not for showing that the loss was or was not a casualty loss. See *Burns* v. *United States*, (D.C. N.D. Ohio) 174 F. Supp. 203. The technical information release and the revenue ruling referred to in the majority opinion, are not the equivalent of regulations, and cannot limit the scope of our consideration of the fundamental question involved. In my opinion the claimed deduction should be disallowed.

TURNER and HARRON, *JJ.*, agree with this dissent.