Henry F. Cate, Jr., and Carolyn Y. Cate v. Commissioner.
Cate v. Commissioner
Docket No. 86922.
United States Tax Court
T.C. Memo 1962-214; 1962 Tax Ct. Memo LEXIS 95; 21 T.C.M. (CCH) 1146; T.C.M. (RIA) 62214; September 11, 1962
*95 Petitioners purchased a home in Duxbury, Massachusetts, in 1953 from Winthrop A. Clarke. Clarke had owned the property since 1950 and had made extensive alterations. He observed no evidence of termite damage. Petitioners examined the property at the time of purchase. They rented it out from 1953 to 1955 during which period they examined it for maintenance and repairs. They occupied the property themselves from 1955 through 1958, during which they continued to examine it for maintenance and repairs. The real estate agent who originally sold the property to them was in it on a number of occasions from 1955 through 1958. Prior to January 1958, no evidence of termites was observed. In January of 1958, a carpenter found evidence of fresh termite activity, and thereafter extensive evidence of termite activity and damage was found. Expert testimony considered. Held: That the damage was shown to have occurred with the degree of suddenness required to support a casualty loss deduction within the purview of sec. 165(c)(3) of the Code of 1954. Amount and year of loss deduction determined. Kenneth C. Tiffin, Esq., for the petitioners. Douglas D. Robertson, Esq., for the respondent. FISHER
Memorandum Findings of Fact and Opinion FISHER, Judge: Respondent determined a deficiency in income tax of petitioners for the taxable year 1958 in the amount of $2,717.17. The issues present are whether petitioners are entitled to deduct a loss resulting from termite damage to their personal residence as a casualty loss within the meaning of section 165(c)(3) of the Code of 1954, and, if so, the amount of the loss and the year in which allowable. Findings of Fact Some of the facts are stipulated and are incorporated herein by this reference. Petitioners are the owners of a parcel of residential real estate located in South Station Street, Duxbury, Massachusetts. Petitioners acquired *97 this property from Winthrop A. Clarke and his wife on or about September 21, 1953, for $26,500. In 1955 petitioners purchased land adjoining the South Station Street property for $4,000. Petitioners filed a joint income tax return for the taxable year 1958 with the director for the district of Massachusetts. From 1953 until the Fall of 1955, petitioners rented their residence located on South Station Street, Duxbury, Massachusetts, to Allen Johnson. Clarke acquired the property in 1950 and made alterations and repairs before selling it to petitioners. He found no evidence of termites during this period. Barbara S. Mullowney, who was in the real estate business beginning in 1950, handled the sale from Clarke to petitioners. She went over the property inside and out in 1953, and was in the house a number of times on social calls during the period from 1953 to 1958. She observed no evidence of termites prior to 1958. Petitioners rented out the property from 1953 to 1955 and thereafter used it as their own home. They examined the property from time to time, including the period in which it was rented, for maintenance and repairs. They saw no evidence of termites prior to January *98 of 1958. In January of 1958, a local carpenter found indications of active termites and informed Carolyn that she had a termite problem. Petitioners brought in a consultant who, in March or April of 1958, confirmed the fact that there was a substantial fresh and active termite infestation. The infestation had existed for approximately six months. The exact date when termites first attacked the property in question is unknown. There was extensive termite damage to the sills, stringers and sheeting in the northwest corner of the home. The damage extended to the ceiling, approximately seven feet in height, and necessitated replacement of the walls, floor and sills in this area. As a result of the infestation, the fair market value of the property after the infestation was at least $7,666.90 less than its fair market value prior to the infestation. The deduction taken by petitioners on their income tax return for 1958 was $7,666.90. The deduction was disallowed by respondent on the ground that the claim "does not constitute an allowable deduction within the scope of section 165, Internal Revenue Code of 1954." There was some evidence of old termite damage *99 in the southeast corner of the residence which was not related to the damage in issue. Opinion Respondent contends that there was no "casualty" within the intendment of section 165(c)(3) of the Code of 1954, [1] on the ground that the element of suddenness with respect to the alleged termite invasion and resulting damage was absent. In essence, it is respondent's position that the termite infestation and resultant damage involved herein occurred over a long period of time and hence lacked the requisite element of suddenness. Petitioners, on the other hand, urge that the initial invasion and subsequent damage occurred in a relatively short period of time. The term "suddenness" is comparative, and gives rise to an issue of fact under circumstances which may exist in a variety of backgrounds in respect of which the rapidity and detection of the damage *100 may vary considerably, depending on the nature of the hostile operating force and the surrounding circumstances of the particular case. We reviewed the authorities relating to termite damages in E. G. Kilroe, 32 T.C. 1304 (1959). Since there has been no significant development in the case law since Kilroe, it would serve no useful purpose to repeat or expand upon that review at this point, especially since each case is substantially dependent upon its own particular facts. The words "sudden" and "relatively short period of time" may have varying connotations under varying circumstances. The perspective may be quite different depending upon whether we are dealing with the tortoise, the hare, the horse, the automobile, the airplane, or the space ship. We, of course, cannot determine the precise moment at which the termite infestation began. We have determined as an ultimate fact that it continued for a period of approximately six months prior to discovery. We base this largely on the opinion testimony of petitioners' expert (who impressed us as well qualified and objective in approach). We note, also, that prior to discovery of the activity the infestation had not progressed *101 to the point where petitioners observed any open or apparent indications of termite infestation. It is true that the observers were not termite experts. Nevertheless, they lived in the property, inspected it for repairs and maintenance, yet saw no suspicion of termite activity. While not of itself controlling, the testimony of the owners is worthy of some circumstantial consideration in determining whether the period of infestation was of short or long duration. We, of course, have carefully considered the testimony of respondent's expert. He appeared to us to be somewhat pedantic and dogmatic. After observing the witness and analyzing his testimony in the light of the whole record, we cannot accept as controlling his opinion to the effect that the period of infestation had existed for three years or more before discovery. In all events, we think a practical rather than a precision approach is called for, and that the evidence is quite sufficient to establish that the termite damage was "sudden" and over a "relatively short" period of time within the principles announced by the authorities as reviewed in Kilroe, supra. We hold, accordingly, that the loss in question *102 was a casualty loss. As to the amount of the loss, there is expert testimony to the effect that the fair market value of the property prior to the loss was $9,000 more than the fair market value after, and resulting from, the loss. We need not consider whether this amount is precisely accurate since petitioners only claimed $7,666.90. We are satisfied by the evidence of the expert that the amount of $7,666.90 claimed by petitioners is not excessive even though the method used by petitioners themselves in calculating this amount was faulty. There is no issue raised as to the basis of the property or as to whether petitioners were compensated for any part of the loss by insurance or otherwise. As to the year of allowance of the loss deduction, it is our view that, under the circumstances of the instant case, the fixed and identifiable event required by Inc. Tax Regs., vol. 1, section 1.165-1, was the discovery of the loss and damage in 1958, and we accordingly hold that 1958 is the appropriate year for such allowance. Decision will be entered under Rule 50. Footnotes
1. SEC. 165. LOSSES. * * *
(c) Limitation on Losses of Individuals. - In the case of an individual, the deduction under subsection (a) shall be limited to - * * *
(3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. * * *↩