Dominick Calderazzo and Lucille Calderazzo v. Commissioner.
Calderazzo v. Commissioner
Docket No. 1985-65.
United States Tax Court
T.C. Memo 1967-25; 1967 Tax Ct. Memo LEXIS 236; 26 T.C.M. (CCH) 140; T.C.M. (RIA) 67025; February 13, 1967
*236 1. The amount of charitable contributions deductible under section 170(a)(1), I.R.C. 1954, during the taxable year 1962, determined. 2. The amount of a casualty loss resulting from a hurricane, deductible under section 165(c)(3), I.R.C. 1954, during the taxable year 1962, determined. Joseph P. Marcelle, 15 Park Row, New York, N. Y., for the petitioners. Kennard I. Mandell, for the respondent. ARUNDELL
Memorandum Findings of Fact *237 and Opinion ARUNDELL, Judge: Respondent determined a deficiency in income tax for the calendar year 1962, and an addition to the tax under section 6651(a), I.R.C. 1954, in the amounts of $1,951.30 and $97.57, respectively. Petitioners concede that if there is any deficiency due for 1962 they are liable for an addition to the tax under section 6651(a) for failure to file their tax return on the date prescribed by law. The issues litigated are whether the respondent erred in disallowing as deductions from gross income (1) charitable contributions in the amount of $5,222 and (2) a casualty loss in the amount of $500. Findings of Fact Petitioners [1] are individuals, husband and wife, who for the calendar year 1962 filed a joint income tax return with the district director of internal revenue at Albany, N. Y. During the said taxable year, petitioners resided in New Rochelle, N. Y. At the time of the hearing they were residing at 56 Doyer Avenue, White Plains, N. Y.
*238 On the joint return for 1962 petitioner reported wages from Regal Footwear, Inc., of Middletown, Conn., of $25,000, and excluded therefrom sick pay of $600, thus leaving an adjusted gross income reported of $24,400. Petitioners claimed two exemptions of $600 each and itemized their deductions of $9,332, which included $500 for "[casualty] loss, storm damage to shrubs not covered by insurance" and $5,300 as contributions to: Catholic Charities
$3,000.00
United Jewish Appeal
1,000.00
Jewish Federation
1,000.00
Other
300.00
The joint return was prepared by Guy Cambria, C.P.A., now deceased, of Knost, Everett & Cambria, certified public accountants, Middletown Savings Bank Building, Middletown, Conn., and was filed on or about April 23, 1963. In a statement attached to the deficiency notice, the respondent advised petitioners as follows: Adjustments to Income
Taxable income as disclosed by
return [$24,400 minus $1,200
minus $9,332]
$13,868.00
Unallowable deductions and ad-
ditional income: (a) Contributions
$5,222.00
(b) Medical expense
268.00
(c) Casualty loss
500.00
5,990.00
Taxable income as corrected
$19,858.00
*239 Explanation of Adjustments (a) The deduction on your return for contributions in the total amount of $5,300.00, computed as shown below is not substantiated in any amount. * * *
A reasonable deduction for contributions in the amount of $78.00 is hereby allowed. The balance of your deduction in the amount of $5,222.00 is disallowed accordingly. * * *
(c) Your deduction for a casualty loss in the amount of $500.00 is not substantiated and is disallowed. Petitioners' business is that of a shoe manufacturer. Petitioner has been in the shoe business since 1913 and has been a shoe manufacturer since 1931. Until 1952 his business prospered and he paid large taxes. In 1952 he ran into financial difficulties, and in 1953 or 1954 he was adjudicated a bankrupt. Since the adjudication and during 1962 petitioner has had no bank account. Prior to 1952 and during 1962, petitioner was chairman of the Shoe and Leather Division of Cardinal Spellman's Committee of the Laity, and co-chairman of the Shoe Division of the United Jewish Appeal and Jewish Federation. In 1950 petitioner was knighted by the Pope, through the recommendation of Cardinal Spellman, as a Knight of Malta. *240 There are about 500 such Knights in the United States. During 1962, as a Knight of Malta, petitioner made pledges to Catholic charities and, as co-chairman of the Shoe Division of the United Jewish Appeal and Jewish Federation, he made pledges to those organizations. Since petitioner had no checking account, all payments made on the pledges were made in cash. During 1962 he paid some of his pledges on a weekly basis and some on a monthly basis. The entire amount pledged in any one year was not always paid in full during that year. That was true for 1962. Petitioner kept a daily record in a diary of all pledges made and the amounts paid thereon. His record for 1962 was given to Cambria for use in preparing petitioners' joint return for 1962. Shortly after preparing this return, Cambria died. After the Commissioner questioned petitioners' return for 1962, petitioner made several attempts to get his records back from the accounting firm of Knost, Everett & Cambria, but the records have never been located. During 1962 petitioner made payments on his pledges to charity of $2,000. During 1962 petitioner suffered a loss from a hurricane that damaged some of his shrubbery, the roof *241 to his house, and an outside barbecue. It cost petitioner $500 to repair the damage caused by the hurricane. He paid this amount to Peter Friola. Petitioners, in 1962, sustained a casualty loss from a hurricane in the amount of $500 which was not compensated for by insurance or otherwise. Opinion The issues to be decided are factual. The burden is on petitioners to show error in respondent's determination. Rule 32, Rules of Practice of Tax Court. We think petitioners have met this burden as to the casualty loss and have only partially met their burden as to the contributions. The applicable sections of the 1954 Code are in the margin. [2]
*242 The only evidence offered is a copy of the joint return and petitioner's testimony under oath. Regarding the contributions, petitioner testified, among other things, that during 1962 he pledged and paid in cash the amounts deducted on the return; that he kept a record of such amounts; that he turned the records over to Cambria at the time Cambria prepared the joint return; that Cambria later died; and that the records could not be located. Respondent offered no evidence except a copy of the joint return which was a joint exhibit. It would seem that since petitioner's records could not be located, he could have contacted the donees to whom he made the contributions in 1962 and obtained some kind of evidence from them that the alleged contributions of $5,300 were made. The $78 allowed by respondent was allowed under certain guidelines promulgated by the New York District [3] which provided that where an audited return lacks receipts and other written proof for charitable deductions the auditor making the examination is authorized to allow up to $78 ($1.50 per week) in charitable deductions on a joint return, provided the taxpayer's oral statements were credible. In any event, petitioner *243 could not be allowed more than 20 percent of his adjusted gross income of $24,400, or $4,880. In the course of direct examination, petitioner testified, in part, as follows: Q Now, you paid the United Jewish Appeal on account of these drive one thousand dollars, according to your tax return. Can you tell the Court just how those payments were made? A Same thing. Q And what for? A Pledges and paid on the instalment plan. As a matter of fact, I owe them a lot of money now on some old pledges that I made. I still owe them a lot of money. Q Did you pay them the one thousand dollars finally? A Oh, yes, but since then I've made other contributions. Q You have here Jewish Federation, one thousand dollars. A Yes, sir. Q Was that paid during the year 1962? A Yes, sir, 1962. Q And what was that paid for? On pledges? A On pledges also. [Emphasis supplied.] It is believed that the following quotation from Quock Ting v. United States, 140 U.S. 417, 420 (1891), is appropriate at this point.. Undoubtedly, *244 as a general rule, positive testimony as to a particular fact, uncontradicted by any one, should control the decision of the court; but that rule admits of many exceptions. There may be such an inherent improbability in the statements of a witness as to induce the court or jury to disregard his evidence, even in the absence of any direct conflicting testimony. He may be contradicted by the facts he states as completely as by direct adverse testimony; and there may be so many omissions in his account of particular transactions, or of his own conduct, as to discredit his whole story. His manner, too, of testifying may give rise to doubts of his sincerity, and create the impression that he is giving a wrong coloring to material facts. All these things may properly be considered in determining the weight which should be given to his statements, although there be no adverse verbal testimony adduced. We do not disregard all of petitioner's testimony. We realize petitioner was handicapped by the loss of his personal records. But we think as previously stated that he could and should have obtained from the donees some proof of such relatively large contributions. Petitioner in his testimony *245 mentioned two alleged Catholic charities, the Stepanek High School in White Plains and the St. Vito's Church in Mamaronek. He testified that he "thought" the contribution to the High School was "about a thousand dollars * * * piecemeal" and "[then], St. Vito's Church, in Mamaronek, a contribution there. This wasn't paid all at one time, sir, it was paid at intervals, pledge that we make, sir, pledged." Petitioner may have pledged the amounts deducted on the return but we are not satisfied that during 1962 he actually paid all that he pledged for he says "[as] a matter of fact, I owe them a lot of money now on some old pledges that I made." We have carefully considered all of the evidence and have found as a fact that during 1962 petitioner made cash contributions to charity of $2,000. Cf. Cohan v. Commissioner, 39 F. 2d 540 (C.A. 2, 1930). We hold that this amount of $2,000 is deductible under section 170(a)(1), supra. Regarding petitioner's claim for a casualty loss of $500 due to hurricane damages, the general rule for measuring the loss is the difference between the fair market value of the property damaged immediately before and after the casualty. Helvering v. Owens, 305 U.S. 468; *246 Biddle v. United States, 175 F. Supp. 203 (D.C. E.D. Pa.); Whipple v. United States, 25 F. 2d 520 (D.C. D. Mass.); Frederick H. Nash, 22 B.T.A. 482. In the instant case, there is no direct evidence of the value of the property damaged immediately before and after the damage was done. However, we are satisfied and have found as a fact that petitioner spent at least $500 in restoring the property to the condition it was in before the storm. The claimed loss was not compensated for by insurance or otherwise. In E. G. Kilroe, 32 T.C. 1304, 1311, we said: Petitioner testified that he spent a little over $2,000 for repairs to his residence resulting from the damage done by termites. The stipulation shows the amount expended to have been $2,042.88. Although petitioner has not directly proved the fair market value of the house immediately preceding the casualty and the fair market value thereafter, we think it reasonable to infer that the fair market value of a termite-infested house would be reduced, as a result of such infestation, to an extent at least equal to the actual expense of repair and replacement. See Buist v. United States, *247 supra. * * * We hold the respondent erred in disallowing the claimed casualty loss of $500. E. G. Kilroe, supra.
Decision will be entered under Rule 50. Footnotes
1. Lucille Calderazzo is a petitioner herein only by reason of the filing of a joint return for 1962 with her husband. Unless otherwise indicated, Dominick Calderazzo will hereinafter be referred to as the petitioner.↩
2. Internal Revenue Code of 1954. SEC. 165. LOSSES. (a) General Rule. - There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. * * *
(c) Limitation on Losses of Individuals. - In the case of an individual, the deduction under subsection (a) shall be limited to - * * *
(3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. * * * SEC. 170. CHARITABLE, ETC., CONTRIBUTIONS and GIFTS. (a) Allowance of Deduction. - (1) General Rule. - There shall be allowed as a deduction any charitable contribution * * * payment of which is made within the taxable year. A charitable contribution shall be allowable as a deduction only if verified under regulations prescribed by the Secretary or his delegate. * * *
(b) Limitations. - (1) Individuals. - In the case of an individual the deduction provided in subsection (a) shall be limited as provided in subparagraphs (A), (B), (C), and (D). * * *
(B) General Limitation. - The total deductions under subsection (a) for any taxable year shall not exceed 20 percent of the taxpayer's adjusted gross income * * *↩
3. Internal Revenue Service Public Information Release, May 14, 1965, published unofficially at par. 54,875, P.H. Federal Taxes 1965, Vol. 6.↩