Umit Sahkul and Ingrid A. Sahkul v. Commissioner.
Sahkul v. Commissioner
Docket No. 2885-68.
United States Tax Court
T.C. Memo 1970-60; 1970 Tax Ct. Memo LEXIS 300; 29 T.C.M. (CCH) 260; T.C.M. (RIA) 70060; March 9, 1970, filed. Umit Sahkul, pro se 4409 19th Rd., Arlington, Va. Charles L. Dunlap, for the respondent. Memorandum Findings of Fact and Opinion Respondent determined a deficiency of $522.05 in petitioners' income tax for the year 1966. After a minor concession by petitioners, the only issue presented for our decision is whether petitioners sustained a deductible casualty loss during the taxable year under section 165, I.R.C. 1954, [1] as a result of damage to their residence by termites. Findings of Fact Some of the facts and exhibits are stipulated and are found to be as stipulated. Petitioners *301 Umit Sahkul and Ingrid A. Sahkul are husband and wife. Umit Sahkul will be sometimes referred to herein as "petitioner." At the time their petition was filed they resided at 4409 19th Road, North, Arlington, Virginia. They filed their 1966 joint income tax return with the district 261 director of internal revenue in Richmond, Virginia. Petitioners purchased their residence at 4409 19th Road, North on January 27, 1966, and moved in five days later. At the time of their purchase the kitchen portion of the house was a wooden structure and the rest of the house was built of brick. Part of the wooden foundation of the kitchen was in direct contact with the ground and part located over an unfinished basement. The house was more than 17 years old when petitioners bought it. Petitioners financed the purchase of their residence through a mortgage insured by the Federal Housing Administration (FHA). Prior to their purchase of this house, petitioners were informed that an FHA mortgage in the maximum amount of $24,000 would be approved subject to these conditions: that the buyers pass credit clearance, and that the house be inspected by an established termite inspecting firm and be found *302 termite free. The body of a letter dated December 27, 1965, addressed by the Southern Exterminating Company to the prior owner of the residence purchased by petitioners, attached to petitioners' 1966 income tax return, states as follows: This is advise that we have treated the structure at 4409 N. 19th Road, Arlington, Virginia, for termites and now there is no visible evidence of active termite infestation in the existing construction and no visible structural damage that was to be repaired by us, if any. A guarantee of termite protection for one year is hereby given with the privilege of contract renewal for indefinite amount of years at the rate of $18.00 unless otherwise specified on signed contract. We assume no monetary liability for damage or infestation that cannot be detected without opening concealed areas or timbers. However, we will chemically treat any termite recurrence during the life of this grarantee at no charge. No other letter from "an established termite inspecting firm" was introduced in evidence. This letter was written in December when the weather is usually cold and any termite colony is inactive. On May 6, 1966, petitioners found black dust on *303 the kitchen wall above their stove. They wiped the dust away and found small holes on the plaster. Petitioner scratched the wall with a penknife, and large amounts of plaster began to fall. On further inspection petitioners encountered termites in the wall. When petitioners went outside of their house and pulled away some outside planks to inspect the wooden frame of their kitchen, they found that the entire foundation of the kitchen was completely infested with termites. Later petitioners called the Southern Exterminating Company and asked them to come and spray the house with chemicals so that the termite infestation would not spread. The termite infestation was so severe that the exterminators were unable to kill the termites even after pumping "gallons and gallons of chemicals in the kitchen area and around the entire house." It was found that termite damage extended even to the rafters of the kitchen. The structural damage to the kitchen portion of the house was so severe that the petitioners, upon the advice of an architect and contractor in the general contracting firm which employed petitioner, determined it was necessary that the kitchen portion be torn down completely and *304 rebuilt. Starting in June 1966, petitioner's employer rebuilt the kitchen for petitioners at cost. The reconstructed kitchen was built of brick and was larger than the old kitchen. On their 1966 joint income tax return petitioners claimed a casualty loss deduction of $2,729.22, which represented approximately 56 percent of their total cost in rebuilding the kitchen. Respondent disallowed the claimed deduction. At the time petitioners purchased the residence at 4409 19th Street, North they were unaware that any portion of that residence was infested with termites. Jane Palmer was a prior owner of the residence. On one occasion, not later than 1960 or 1962, she asked Eugene Spinks to look at the kitchen. Spinks, who lived in the residence next door, is a contractor of 20 years experience. Spinks discovered a swarm of termites in the kitchen and advised Jane Palmer to have the house termite treated. He also inspected underneath the house. Although he "couldn't see too much underneath," he found that the floor of the kitchen was very weak, and "would spring" when it was stepped on. Jane Palmer sold the residence to Albert Franklin in 1960 or 1962. Later, at Franklin's request, *305 Spinks again inspected the house, and gave Franklin an estimate of 262 what it would cost to repair the house. Spinks also told Franklin of what he had learned when he inspected the house for Jane Palmer. When he inspected the house for Franklin, the kitchen floor was much weaker than when Jane Palmer lived in the house. Franklin, who also was employed by a general contracting firm, put new linoleum on the kitchen floor. Spinks did not know, except from what Franklin may have told him, of any other repairs Franklin may have made or of any other steps Franklin may have taken to eliminate termites from the kitchen portion of the house. Subterranean termites are the only termites found in the Washington, D.C. metropolitan area, where petitioners' residence is located. These termites are social insects, living in colonies in the ground. In the winter the termite colony is inactive. When the weather is cold, the termites go down into the ground and stay below the frost line until the weather becomes warmer. Termites need moisture and cellulose in order to live. Worker termites must keep their bodies surrounded by moisture. When termites move from soil to wood, they may build flattened *306 earthen shelter tubes. These tubes serve to protect the termites from enemy ants, to carry moisture from the ground, and to protect the termites from the drying effect of direct exposure to air. Cellulose is the principal food of termites. It is usually obtained from wood and other plant tissues, although infrequently from living plants. Termites may attack wood which is left on or in the ground after construction of a building. They may enter a building through grade stakes or other wood forms in contact with the ground and a wooden floor, or they may enter through a settlement crack in a concrete foundation. The hazard of termite infestation is greatest when wood supports or other wood portions of a building are directly on the ground or are close to the ground in an area of poor ventilation. Termites can infest a building for several years and do considerable damage before their presence is detected. Prior to petitioners' discovery of termites in their kitchen on May 6, 1966, the kitchen portion of petitioners' home had been infested with termites for at least four years. Opinion KERN, Judge: We are again faced with the question of whether taxpayers, whose home had been *307 seriously damaged by termite infestation, can claim a deduction on account of such damages within the ambit of the words "other casualty" contained in section 165(c)(3) of the Internal Revenue Code of 1954. On the basis of the evidence before us we have found as a fact that the infestation by termites of the kitchen portion of petitioners' home had taken place over a period of at least four years prior to petitioners' discovery of their presence. Our finding is based largely on the testimony of respondent's expert witness, an authority on termites, and the testimony of petitioners' neighbor, Spinks. Respondent's expert witness estimated that the period of termite infestation and damage prior to discovery was at least five to eight years. This estimate was predicated on his knowledge of termites and their habits, the testimony of petitioner, the testimony of petitioners' neighbor and photographs received into evidence. The opinion of the expert witness is corroborated by the testimony of petitioners' neighbor, who actually saw termites in the kitchen portion of the residence at least four years before it was purchased by petitioners and who testified that the *308 floor of the kitchen appeared to be in even worse condition at a time subsequent to his initial discovery of termites therein. We are not persuaded to the contrary by the letter from the exterminating company, attached to petitioners' 1966 income tax return and quoted in our findings. That document states that the house had been "treated" by the exterminating company "for termites and now there is no visible evidence of active termite infestation in the existing structure and no visible structural damage that was to be repaired * * * if any." The document indicates that "concealed areas and timbers" were not inspected. The inspection probably took place in late December, 1965. Respondent's expert witness testified that termites are inactive or dormant in the winter, when the house was inspected. The expert witness also testified that termites can do considerable damage before their presence is detected. Unlike the case of E. G. Kilroe, 32 T.C. 1304 (1959), the 263 circumstantial evidence in the instant case compels us to conclude, as we previously stated, that the termite damage discovered by petitioners in 1966 resulted from a continuation of termite infestation *309 which began at least four years prior to the purchase by petitioners of their residence. [2] See Rudolf Lewis Hoppe, 42 T.C. 820. *310 The cases of E.G. Kilroe, supra, and Shopmakerv. United States, 119 F. Supp. 705 (E.D. Mo. 1953), cited by petitioners are distinguishable on their facts. In the first case the period of termite infestation as shown by the facts was 3 months, and in the second case was 14 months. [4] Two other "fast termite" cases are Rosenberg v. Commissioner, 198 F. 2d 46 (C.A. 8, 1951), involving an infestation of 12 months, and Buist v. United States 164 F. Supp. 218 (E.D. S.C., 1958), INVOLVING AN INFESTATION OF 9 MONTHS.
We agree with petitioners that their subjective knowledge of the termite infestation came to them as a sudden catastrophic shock in May of 1966. However, the sudden realization by them of the widespread damage sustained by their property over an extended period *311 of time does not render the damage itself "sudden" so that it may be considered as a "casualty" under the applicable Code provisions and deductible as a casualty loss. Despite our sincere sympathy for petitioners in connection with the serious financial misfortune suffered by them, we must agree with respondent that the termite damage to the petitioners' home did not constitute a deductible "casualty loss" under section 165(c)(3) and the case law interpreting that section. Decision will be entered for the respondent. Footnotes
1. Hereafter all section references are to the Internal Revenue Code of 1954, unless otherwise indicated.↩
2. In the Kilroe case we pointed out (p. 1310) that "the fresh channels found at the time the damage was discovered and the failure to find evidence of termite activity prior thereto support the view of recency." We also pointed out that respondent in that case "offered no opinion or other evidence supporting a contrary view." The time during which the termite damage in the instant case took place was too long a period for the loss to be considered as "sudden" and therefore a "casualty" under prior case law. Leslie C. Dodge, 25 T.C. 1022 (1956) (three years); Winsor v. Commissioner, 278 F. 2d 634 (C.A. 1, 1960), affirming on taxpayer's appeal a Memorandum Opinion of this Court (five years).
Our conclusion that the damages sustained by petitioners do not constitute a deductible casualty loss makes it unnecessary to consider, as it was unnecessary in the Winsor case (p. 635), "the question of whether, if the damage had been found to have been incurred within a sufficiently short period, but had commenced before the house was bought, the casualty was taxpayer's."
[3]↩
4. In the Shopmaker case the termite damage was discovered on February 8, 1951. The trial court found that there was "substantial evidence that the residence was free of termites * * * in December 1949" and concluded, in the apparent absence of any testimony of the Government to the contrary, that "termites invaded the premises subsequent to December 1949."↩